[Crim. No. 6109.   Second Dist., Div. One.   Mar. 31, 1958.]

THE PEOPLE, Respondent, v. DOUGLAS KELLY
BRAZELL, Appellant.

Douglas Kelly Brazell, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Albert Bianchi, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused of violating section 337a of the Penal Code (bookmaking) as follows:

Count I. Violation of subdivision 1 of said section on or about January 12, 1957.

Count II. Violation of subdivision 6 of the aforesaid section, on or about January 12, 1957.

Count III. Violation of subdivision 1 of the aforesaid section on or about January 19, 1957.

Count IV. Violation of subdivision 6 of said section on or about January 19, 1957.

Count V. Violation of subdivision 1 of said section on or about January 26, 1957.

Count VI. Violation of subdivision 6 of the aforesaid section on or about January 26, 1957.

Defendant pleaded not guilty to each count of the information; was tried before a jury and found guilty on all counts. Probation was denied and defendant was sentenced to a term of six months in the Los Angeles County Jail, on each count, the sentences to run concurrently with each other. From the judgment of conviction and "the sentencing of defendant" defendant prosecutes this appeal.

The following will serve as a fair epitome of the factual background surrounding this prosecution.

As to Counts I and II, Officer Sargis A. Trotsky testified that during the time here in question he was a Los Angeles city police officer attached to the "vice squad, bookmaking detail," and for some five and a half years had been conducting bookmaking investigations. That he had "become

familiar with the signs and symbols and characters and language commonly used and employed by bookmakers in this community''; also ''with the manner in which bets are accepted and given''; and with ''any papers or periodicals which are sometimes used by bookmakers.''

As to these counts, Officer Trotsky further testified that on January 12, 1957, at approximately 12:50 p. m., he entered the Alaska Café in San Pedro, Los Angeles County, and seated himself at the bar. A few minutes later defendant entered and stood about 10 feet away from the officer. The latter then observed a third person approach defendant and say, ''War Vote, five to win,'' and thereupon such person handed defendant a piece of United States currency, the denomination of which Officer Trotsky could not determine. Defendant took the money and replied, ''Okay,'' then removed a scratch sheet (a daily publication commonly used by bookmakers and horse players) from his back pocket, looked at it for a few seconds, then replaced it in his pocket.

Later, Officer Trotsky himself consulted a scratch sheet and found that a horse called War Vote was scheduled to run in the first race at the Santa Anita Race Track on that date. Without objection, the officer testified that in his opinion the aforesaid conversation between defendant and the unknown third party was ''. . . a bet or wager on a race horse by the name of War Vote, and the five dollar win was the amount wagered on that horse, the win being the coming in number one position.''

With reference to Counts III and IV, Officer Trotsky testified that, on January 19, 1957, he again visited the Alaska Café at about 12:50 p. m. and seated himself at the bar. That several minutes later defendant entered and approached a person who was sitting at the bar. That such person turned around, and facing defendant, said, ''One and five, win and place,'' thereupon handing defendant a piece of currency which Officer Trotsky believed to be a ten dollar bill. That defendant said, ''Okay,'' took the money and walked to the rear portion of the bar. Without objection the officer again expressed his opinion that what he had just heard constituted the placing of a bet or wager; the word ''one'' signifying the first race, and the word ''five'' referring to the horse holding the fifth handicap position (the horse listed as fifth choice on the scratch sheet).

With regard to Counts V and VI, Officer Trotsky testified

that, once more, on January 26, 1957, he went to the Alaska Café at about 4 p. m. That sometime within the next 30 minutes, defendant entered, remained a short time, departed, and then returned again at approximately 4:30 p. m. That defendant thereupon approached a young man seated at the bar to the right of Officer Trotsky and whom the officer had previously heard called by the name Johnny. The person named Johnny said to defendant, "How did I do on the third, fourth and sixth?" Defendant then took his scratch sheet from his rear pocket, looked at it for a short time, then said, "Johnny, you have got $63.00 coming." With that defendant replaced the scratch sheet in his pocket, took out some currency and gave the man called Johnny some six or eight bills and some change.

Roughly five minutes later Officer Trotsky noted that the television set in the bar was broadcasting the preparations for the seventh race at Santa Anita Race Track. Immediately after the number 6 horse was shown on the screen in the process of going from the paddock onto the track, the officer observed a young male Mexican walk over to where defendant was standing, hand him two pieces of currency and say to him, "Make it number 6, Doug." Defendant took the money and said, "Okay." In the opinion of Officer Trotsky, the foregoing constituted a wager on the number 6 horse appearing on the television screen.

When arrested by a Los Angeles police officer on January 31, 1957, defendant had a scratch sheet in his right rear pocket.

On cross-examination, Officer Trotsky testified that scratch sheets were sold at news stands in the area in which he was investigating, and to his knowledge, they were not illegal. That the majority of the sales of so-called scratch sheets were made to bettors. The officer also testified that at no time did he attempt to identify or obtain the name or address of the aforementioned unknown persons who had dealings with defendant in the Alaska Café.

Sworn as a witness in his own behalf, defendant testified that he was acquainted with the Alaska Café and during the period here in question, lunched there during the noon hour about five days per week. He denied each and all of the conversations testified to by Officer Trotsky or that he paid anyone the sum of $63 in the café. He further testified that since he heard the descriptions of these unnamed persons, at the time of the preliminary examination on February 15, 1957, he searched for these people, and was unable to locate

them in the area and as far as he could find out they never existed.

On this appeal, it is the contention of appellant that, as to each of the six counts upon which he was found guilty, the judgment of conviction is not supported by the evidence.

The pertinent portions of Penal Code, section 337a provide in part as follows:

"Every person,

"1. Who engages in pool-selling or bookmaking, with or without writing, at any time or place; or

" . . . . . . . . . . . .

"6. Who lays, makes, offers or accepts any bet or bets, or wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast or between men, beasts, or mechanical apparatus, is punishable by imprisonment. . . ."

Appellant first urges that the entire case presented by the prosecution was based on circumstantial evidence and that the circumstances relied upon being reasonably consistent with innocence, the mere fact that such circumstances may also be reconciled with guilt, does not justify a conviction. This contention is dispelled by the language of the Supreme Court in the case of *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], as follows:

" 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.) In the Perkins case this court expressly rejected the application of the statement from the Staples case to a situation which involved only circumstantial evidence.

As pointed out by the court the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review. It said: 'The rule above announced does no more than to instruct the jury that, if a reasonable doubt is created in their minds for any reason, they must acquit the defendant. But, where the jury rejects

the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this Court is bound by the finding of the jury.' Also in *People* v. *Smith,* 35 Cal. App.2d 73 [94 P.2d 633], involving facts similar to those presented in the case at bar, where the trial was without a jury, it was stated that 'it is a matter for the trial judge to be persuaded beyond a reasonable doubt and not this court.' '' In the case just cited, the appellant therein relied upon some of the cases referred to by appellant herein, but the court said, ''Anything stated in those cases which is inconsistent with the views herein expressed is disapproved.'' (See also *People* v. *Curtis,* 106 Cal.App.2d 321 [235 P.2d 51] ; *People* v. *Oliverio,* 99 Cal.2d 743, 745 [222 P.2d 245].)

█ Appellant's further contention that the conversations and conduct of appellant do not admit of the inference that he was engaged in bookmaking activities cannot be sustained. When the factual situation present in the instant case is compared to that existing in the case of *People* v. *Chaney,* 147 Cal. App.2d 740 [305 P.2d 955], in which a conviction for bookmaking was affirmed, it is at once apparent that the verdict of the jury in the case at bar cannot be disturbed.

The facts presented to the jury in the case now engaging our attention are above narrated and need not be repeated. Peculiarly applicable to appellant's contention that, unexplained, they constitute no incriminatory evidence, is the language of this court in *People* v. *Overman,* 149 Cal.App.2d 125, 131 [307 P.2d 1000], as follows: ''Almost anyone of adult years, who is even casually acquainted with what goes on in the so-called 'sport of kings' at the various race tracks in Southern California and elsewhere would understand what was meant by what was said in the various telephone conversations. With all of the divers advertisements in the various mediums concerning the horse races at the several race tracks, the repeated radio announcements of the results and televising of the different races at least once each week, and with all of the propaganda about how many millions of dollars are given to charity by the race track owners, and all of the news stories of the frailties of the human beings who engage in embezzling money to 'play the horses,' it would be difficult to avoid coming into contact with, and having an understanding of the incidence of the race tracks and what the words meant. As was said in *People* v. *Larum,* 111 Cal.App.2d 732, at page 734 [245 P.2d 323] : 'The conversations and the passing of

the money would be commonly understood as wagers on horse racing, and in the absence of any explanation by defendant that the transactions had a different meaning or purpose, the court could scarcely have failed to find they were wagers. The evidence was sufficient. . . .' ''

True, appellant denied the conversations and the conduct ascribed to him by the police officer, but, as heretofore pointed out, the credibility of witnesses and the intrinsic value and effect of evidence are matters primarily for the duly constituted arbiter of the facts.

Appellant's final contention that before one can be held to ''engage'' in the business of bookmaking, the taking of more than one bet must be shown, as well as the fact that one is actively occupied or employed in making ''a book of bets,'' is unavailing. An unbroken line of authorities hold that to constitute a violation of Penal Code, section 337a, a volume of gambling or betting is not required and that the acceptance of even a single wager in contravention of the statute will suffice.

The judgment is affirmed, and the attempted appeal from ''the sentencing of the defendant'' is dismissed.

Fourt, J., and Lillie, J., concurred.