[Crim. No. 1578.   Fourth Dist.   May 25, 1961.]

THE PEOPLE, Respondent, v. CHARLES ANGELL, Appellant.

Lloyd S. Verry for Appellant.

Stanley Mosk, Attorney General, William E. James, Assist-

ant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant and appellant Charles Angell was charged in Count I with a felony, violation of Penal Code, section 337a, subdivision 6 (bookmaking), in that on October 30, 1959, he feloniously accepted a bet and wager upon the result of football games. In Count II defendant Kenneth Billington was charged with feloniously engaging in bookmaking on October 21, 1959, in violation of Penal Code, section 337a, subdivision 1. In Count III, Billington was charged with accepting a bet and wager on a football game on October 28, 1959, in violation of Penal Code, section 337a, subdivision 6. In Count IV, appellant Charles Angell and defendant Kenneth Angell were charged with feloniously engaging in bookmaking and poolselling on October 28, 1959, in violation of Penal Code, section 337a, subdivision 1. In Count V, appellant Charles Angell and defendant Kenneth Angell were charged with feloniously accepting a bet and wager upon the result of football games on or about November 4, 1959, in violation of Penal Code, section 337a, subdivision 6. In Count VI, appellant Charles Angell and defendant Kenneth Angell were charged with engaging in bookmaking and poolselling on or about October 23, 1959, in violation of Penal Code, section 337a, subdivision 1. In Count VII, appellant Charles Angell and defendant Kenneth Angell were charged with accepting a bet and wager on or about October 30, 1959, and in Count VIII, they were charged with accepting a similar bet and wager on November 4, 1959, both in violation of Penal Code, section 337a, subdivision 6.

Before pleading to the information, appellant Charles Angell moved to set aside the information under Penal Code, section 995, which motion was denied, and he entered a plea of not guilty to the offenses charged as to him. After a jury trial, appellant was found guilty on Counts I, V and VIII, and not guilty on the remaining counts. The remaining defendants were found guilty on the several counts pertaining to them. A motion for a new trial was made and denied. Probation was granted for three years, conditioned upon defendants' serving 30 days in jail. Charles Angell alone appeals from the judgment (order granting probation) (*People* v. *Phipps*, 191 Cal.App.2d 448 [12 Cal.Rptr. 681]; *People* v. *Vetri*, 178 Cal.App.2d 385 [2 Cal.Rptr. 795]; Penal

Code, § 1237) and from the order denying him a new trial. The principal question on this appeal is the sufficiency of the evidence to support the verdict as to appellant Charles Angell.

FACTS

Charles Angell owned the Ming Bar in Anaheim. His father owned the Melody Inn Bar in Fullerton, which was run by defendant Kenneth Angell. Defendant Billington ran the Sadu Bar in Anaheim. One Jose Ramirez, an investigator for the district attorney's office in Orange County, went to the Melody Inn on September 29, 1959, during the football season, and saw Kenneth Angell. Ramirez had, in previous years, placed bets with Kenneth, and on this occasion, at his request, Kenneth gave him three football cards. Ramirez chose three football teams on each card, handed Kenneth a five-dollar bill and received two dollars in return. Ramirez did not win on these cards. He returned on October 8, 1959, and bought more cards and did not win. On October 15, 1959, he had a conversation with appellant Charles Angell at the Ming Bar and asked if he had football cards and appellant told Ramirez, "No, I am not going to have them at the Ming. I am scared to run them here. I only have them at one place and that is in Fullerton." Ramirez solicited permission to have a route in selling for appellant and appellant said, "It could be," but remarked they are rough on sellers in that vicinity, and Ramirez inquired why and appellant said, "Well it is bookmaking, they can get you for bookmaking. It is a felony . . . That is why I don't want to run them here. Only at one place, the Melody in Fullerton."

On October 21, Ramirez went to the Sadu Bar, saw Kenneth Billington and Billington gave Ramirez five dollars for a bet he had previously made. On October 28, Ramirez returned again to the Sadu Bar and received some more football cards and he played two of them with Billington. On October 30, 1959, he saw Kenneth Angell at the Melody Inn and gave him two card stubs (giving their numbers) and two one-dollar bills which Kenneth placed in his shirt pocket. Ramirez won on one of these cards. Ramirez had marked the name "Johnny" on it and some person made a notation on it indicating that five dollars had been paid on the bet. On October 28, a plain clothes officer (Harberth) went to the Melody Inn and Kenneth Angell presented six football betting cards to him. He took one, filled it out, selecting certain football teams which

he thought might win, circled the team numbers on the stub of the card, tore off the stub, signed it "Jam Lindsey," placed the stub and a one-dollar bill on the bar and retained the large portion of the card. Kenneth Angell picked up the stub and the one-dollar bill and took them into the kitchen area.

On November 4, 1959, the officer returned. He had recorded the serial numbers of the paper money he had on his person. Kenneth Angell handed him seven football cards. The officer again marked the cards and gave him the marked one-dollar bill and Kenneth placed these in his pocket. (The stub and bill were later obtained and placed in evidence.) About that time, by prearrangement, Ramirez entered, obtained a handful of cards, made a bet with two marked stubs and two marked one-dollar bills. Kenneth Angell paid him five dollars in one-dollar bills on a winning ticket (People's Exhibit 5). Ramirez left the bar and signalled to other officers, indicating he had made a bet. Two police officers arrived and placed Kenneth Angell under arrest. Kenneth went back near the steam table and produced a brown paper bag containing 157 football cards. These cards were for the games of November 7 and 8. Kenneth Angell brought out of his pocket six one-dollar bills. One was the marked one-dollar bill given by Officer Harberth. Kenneth Angell was allowed the use of the telephone. He was then taken to the police station, searched, and some tickets and two marked one-dollar bills were produced by him.

On November 4, 1959, the same day and hour, Officer Goff was in the Sadu Bar. The telephone rang. Kenneth Billington answered and called for appellant Charles Angell, who was there. After some conversation, he returned to Billington and said, "They just picked up Kenny." Billington then went behind the bar, picked up a trash can and emptied it in the kitchen area. Another officer then entered the Sadu Bar. Goff noticed appellant tap a man named Toby who was seated at the bar and appellant took something from him. Goff heard a piece of paper being torn by appellant in his hand and saw it thrown into the trash can. The officers took Billington and appellant to the back of the bar and effected their arrest. While seated at a table, appellant took something from his pocket, handed Goff a one-dollar bill wrapped around a small piece of pink paper, and said, "Here, take this or put it in your pocket." Apparently appellant did not know Goff was an officer. Later, appellant asked Goff for the paper and it

was returned to him. Appellant put the money in his pocket and placed the pink slip in his mouth. He then took it out of his mouth and put it in an ashtray and made a motion as though touching his lighted cigarette to it. He then removed it from the ashtray and threw it on the floor under his chair. Officer Goff picked it up and identified it as the pink football card number 11618 (People's Exhibit 11). Another officer retrieved a torn football card from the trash receptable where appellant had thrown it.

While at the police station, an officer took a pink slip of paper with notations on it from the person of the appellant. Appellant stated that he had accepted a wager from Billington on some horses and that this slip was the recordation of that wager. Later, appellant was interviewed in reference to the charges. He was quite concerned about what the authorities might do with respect to his father's license pertaining to the Melody Inn. He was asked how long he had been participating in football cards and he replied, in effect, this year and the previous year; that his circulation was rather small and he handled few cards and that he was obtaining his cards from some one in Norwalk and was receiving 25 per cent for handling them and he paid Billington 15 per cent for the ones he handled. He then said he obtained the cards and delivered them to his brother Kenneth Angell at the Melody Inn and also to Billington at Anaheim and that his business ran between $1,500 and $2,000 per season. He admitted trying to chew the one stub and later throwing it on the floor.

A qualified expert in the field of bookmaking explained the system used in wagering on football games by means of football cards, i.e., that football cards are cards printed up with a list of teams which will play on a certain date and also listing probable odds to be given on each team. These cards are sold through agents. They are usually printed on Monday. The bookmaker gets the cards on Monday evening and the following Tuesday or Wednesday the cards are delivered to agents. The agents sell the cards, or contact other people to sell them for them, in such places as defense plants, bars and service stations. Prior to the playing of the first games listed on the cards, the cards will be picked up and turned in to the bookmaker, as they must reach him prior to the first game. The agent customarily receives 25 per cent for handling the cards and ordinarily subagents receive 15 per cent. The cards can be sold for any amount of money but the normal price is one dollar per card. The expert examined some of the football

cards in evidence which contained certain marks indicating the name of the bettor, the amount bet, team picked, and he compared them with a newspaper showing the winners of that day. They compared with the marks indicated.

Billington made quite a full confession of his activities showing that he met appellant in the Sadu Bar in Anaheim in 1955; that appellant approached him about passing out football cards at 15 per cent commission; that he went with appellant to Los Angeles each Monday to obtain the cards at the Pow Wow and that they paid there on Saturday mornings; that he sold part of the cards and paid appellant 15 per cent; that appellant, as agent, handled all of Orange County; that appellant's brother, Kenneth Angell, was also one of appellant's agents; that appellant had a direct telephone connection with the Pow Wow under a code number, and he gave the number.

Kenneth Angell, when booked at the station, was asked why he was handling these tickets and he said it was for the purpose of "stimulating business." He was asked to fill out a card in his own handwriting for the purpose of comparison. In the blank on the fingerprint card, on a line for designation of occupation, he wrote "Bookmaker." He was asked if he booked horses and he replied, "Just football cards."

On the witness stand, appellant Charles Angell denied generally that he was engaged in accepting wagers on football games. He said he and Billington played these football cards often when they were in Los Angeles and that he made personal bets with other people but no cards were involved. As to the horse-racing bet, he said he and Billington were betting only a dinner as to which horse would win.

On rebuttal, an officer testified that appellant told him he obtained these cards in Norwalk, brought them back to Billington and his brother Kenneth Angell at the Melody Inn, and his business netted between $1,500 and $2,000 per season; that occasionally Billington would accept bets for him and telephone them in to Los Angeles and appellant was obtaining 25 per cent and the other two were receiving 15 per cent and that appellant admitted he surreptitiously passed his wallet to an officer in the Sadu Bar, not knowing at the time that he was an officer.

The evidence as to the dates and places of the claimed violations charged against this appellant resolves itself to Count I, in which appellant was charged with accepting a bet

on or about October 30, 1959; Count V, in which he was jointly charged with Kenneth Angell as having accepted a bet on November 4, 1959; and in Count VIII, in which he was jointly charged with Kenneth Angell with accepting a bet on November 4, 1959; all at the Melody Inn.

The testimony in this respect is that on October 28, 1959, Ramirez went to the Melody Inn; that Kenneth Angell sold him two cards and placed two one-dollar bills in his pocket. The numbers on these cards were 11643 and 11644, and they are in evidence. There is sufficient evidence of a bet or wager as charged in Count I, although the offense occurred on October 28 instead of on October 30, as charged. This variance was immaterial. (*People* v. *Moranda*, 87 Cal.App.2d 703 [197 P.2d 394].) The only question is the sufficiency of the evidence to connect this appellant with the crime of his codefendant Kenneth Angell. The same is true as to Counts V and VIII. Ramirez testified to a bet or wager of two dollars given to Kenneth Angell on November 4, 1959, giving the numbers of the stubs as 14223 and 14224. Officer Harberth testified to a prior sale to him by Kenneth Angell on that day. The stub number was 14216. Six other cards were retained by him as evidence.

According to the admission of appellant, he obtained these cards in Los Angeles at the Pow Wow, brought them back to Billington and his brother Kenneth Angell at the Melody Inn, and his business in this connection netted him between $1,500 and $2,000 per season; appellant was receiving 25 per cent and the other two codefendants were receiving 15 per cent of the bets. His brother ran the Melody Inn and it was owned by his father. On November 4, 1959, the date of his arrest, the appellant had in his possession two football betting cards. The numbers on the cards were not too remote in sequence from the numbers on the cards bet by officers at the Melody Inn that same day. On learning of his brother's arrest, he attempted to dispose of the two football betting cards. His attempt to conceal incriminating evidence against him by chewing it or destroying it was highly significant of his general activities in connection with the offenses involved. A single wager in contravention of the statute will suffice to show a violation. (*People* v. *Brazell*, 159 Cal.App.2d 31 [323 P.2d 185].) These circumstances, together with the testimony of the expert witness that this was the typical manner in which a bookmaking agent worked, supports the claim that the corpus delicti was sufficiently established and

the finding of the jury and trial judge that a wager was made as charged and that appellant aided and abetted or encouraged the commission of the crimes. Penal Code, section 31, provides:

"All persons concerned in the commission of a crime . . . and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed." See also *People* v. *Smith,* 176 Cal.App.2d 688, 693 [1 Cal.Rptr. 661]; *People* v. *Koerts,* 58 Cal.App.2d 9 [135 P.2d 614]; *People* v. *Cohen,* 107 Cal.App.2d 334 [237 P.2d 301]; *People* v. *Lima,* 152 Cal.App.2d 576 [313 P.2d 866].

### CLAIMED MISCONDUCT OF JURORS

Some complaint is made because the jurors, during the trial, examined exhibits received in evidence and some discussion there ensued among them in respect to certain markings thereon. The trial judge's attention was called to this fact and he admonished the jurors to refrain from discussing anything in connection with the trial until they retired to the jury room. With this admonition the discussion ceased. We perceive no prejudicial misconduct.

### EXHIBITS

It appears that certain exhibits were examined by the expert witness, out of the courtroom, for the purpose of comparison and in preparation for the testimony produced by the witness. Prejudicial error is claimed in this respect. There is no indication or claim that any changes were made in them. There is no showing the appellant suffered any prejudice by this action.

### PROBABLE CAUSE

Prior to plea, appellant, under Penal Code, section 995, second subdivision 2, and section 997, moved to dismiss the information for lack of sufficient evidence at the preliminary examination to show reasonable or probable cause to hold appellant to answer. Since appellant has not brought to this court a transcript of that evidence taken at the preliminary examination, we are unable to consider the question on this appeal. (*People* v. *Scott,* 24 Cal.2d 774, 777 [151 P.2d 517]; *People* v. *Walker,* 170 Cal.App.2d 159, 163 [338 P.2d 536].) Assuming that the evidence there produced was the same as here produced, there was reasonable or probable cause to

hold the defendant to answer on the charges made. The denial of the motion for a new trial was authorized.

Judgment and order denying new trial affirmed.

Shepard, J., and Coughlin, J., concurred.