[Crim. No. 4405.    First Dist., Div. One.    June 22, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID F. JONES et al., Defendants and Appellants.

Blair F. Burton for Defendants and Appellants.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—This is an appeal[1] by defendants, David F. Jones and Weston D. Bailey (hereinafter sometimes respectively referred to as Jones and Bailey), from a judgment of conviction in Contra Costa County for conspiracy to commit the crime of contriving, preparing, setting up and proposing a lottery. (Violation of Pen. Code, § 182.)[2]

*Questions Presented*

1. Did the trial court have jurisdiction of defendants, or either of them?

2. Did the trial court err in denying defendants' motion to dismiss for lack of probable cause?

3. Did the trial court err in overruling defendants' demurrer?

4. Did the lower court properly instruct the jury?

*The Record*

The facts established by the record, most favorable to the People's case, are as follows:

On September 5, 1960, defendants, Jones and Bailey, along with Red Foster and James Holliday, met in a restaurant in Albany to discuss a gambling proposition. The conversation at this meeting involved the general procedures for establishing a lottery to be operated in Nevada. Holliday informed the others that he had a friend in Reno who would maintain the sweepstakes in Nevada. The discussion also involved the drawing of a picture on the lottery tickets, and it was agreed that an artist would be contacted to compose the desired

---

[1]Defendants have also appealed from the order denying their motion for a new trial. Such order is not appealable where an appeal is taken from a final judgmment of conviction. However, upon appeal from a final judgment, the court may review an order denying a motion for a new trial. (Pen. Code, § 1237; *People* v. *Britton,* 205 Cal.App.2d 561, 562 [22 Cal.Rptr. 921].)

[2]Defendants were acquitted of the crimes of conspiracy to commit grand theft and forgery with which they were also charged.

drawing. Two days later, Foster and Jones, while on business in Benicia, met Norman Suth, a friend of Jones. Jones apprised Suth of the lottery scheme, and Suth arranged an appointment for Jones with a printer, Narsai David. The following day Suth introduced Jones to David at the latter's printing shop in Berkeley. There was no significant discussion at that time other than the making of an appointment for a meeting to be attended by David, Jones, Holliday and Foster. Three days later Jones and Holliday visited David at his printing shop and discussed various aspects involved in printing the tickets. Immediately following this conversation the three went by automobile to El Cerrito for lunch at O'Sullivan's Restaurant. Joining them in the restaurant was another person named Harry Sipe. During lunch Jones and Holliday described the lottery venture to David. Jones stated that a business organization had been formed composed of 10 prominent business people, each of whom was investing $2,000 to finance the venture. It was stated by both Jones and Holliday that the Mayor of either Albany or El Cerrito would be one of the financial promoters of the scheme, and that all the promoters anticipated a substantial profit; Jones told David that the legality of their proposal had been upheld by the District Attorneys of Solano and Contra Costa Counties; that the group had approval to sell tickets in those counties; that the only restrictions were that the group could not sell tickets in Alameda County, to juveniles, or openly on the street; and that sales were to be limited to factories, refineries and other places where the buyer could be directly contacted. Jones and Holliday told David that they were in charge of obtaining the tickets and organizing their distribution. David was also told that because of the organization of the enterprise he would not be in contact with any of the other financial promoters. David was then instructed as to the printing of the tickets. These instructions were that an artist's drawing of a horse's head and horseshoe together with the words, ''Win,'' ''Place,'' and ''Show,'' were to be imposed on the tickets. David printed 200 tickets as samples and gave them to Jones.[3] He then printed 2,000 tickets, which were picked up at the print shop by Jones and Holliday. When Jones and Holliday received the 2,000 tickets, they placed an order for 5,000 more; Holliday returned to the print shop for the second order but only requested 500 for which he paid David. Holliday again returned to the

---

[3] The record does not disclose the locale of this transaction.

print shop and asked for the remainder of the tickets, but David refused to surrender them until he received payment for the balance due for the printing job. Jones did not accompany Holliday on these subsequent two visits. It was David's testimony that Jones "stopped coming around...."

Subsequently, in 1961, David was advised by a private investigator that the scheme was possibly illegal, and that he should inform the Attorney General of the projected enterprise. David reported the venture in May of 1961, forwarding all the printing and engraving equipment to the Attorney General's office, and revealing the various events that had unfolded to that point. David's account of the lottery proposal was contained in a report made by a Special Agent of the State Department of Justice to the Chief Assistant Attorney General. This report was admitted in evidence without objection.[4]

### Proceedings in the Trial Court

The clerk's transcript discloses that three amended indictments were filed. Demurrers were interposed to the original indictment, the amended indictment and the second amended indictment. Demurrers were sustained as to the original indictment and the amended indictment. The demurrer to the second amended indictment was overruled. Thereafter, upon leave of court, an amended indictment (hereinafter referred to as the "third amended indictment") was filed by the People. Defendants did not demur or otherwise make any motion directed to this indictment, but entered pleas of not guilty to the offenses therein charged. Prior to the pronouncement of judgment, defendants moved for a new trial on the ground that "[t]he Court misdirected the Jury in matters of law, and the verdict is contrary to law and evidence," and for an order in arrest of judgment upon the ground that the count upon which defendants were convicted "states only a misdemeanor outside the jurisdiction of the Superior Court and barred by the Statute of Limitations." The motion for new trial was denied. The clerk's transcript does not show the disposition of the motion in arrest of judgment. It discloses, however, that the two motions which were contained in the same pleading were apparently treated as one motion and that the minute entry that the motion was

---

[4] It should be here noted that the statement was a summary of David's talk with the agent. The statement was not signed by David nor was it a reporter's transcript of the unsworn interview.

denied was intended to apply to both motions.[5] In any event, no point is made on appeal with respect to this irregularity. Moreover, after the denial of the motion for new trial, defendants' counsel stated to the court at the arraignment for judgment that he had no legal cause to show why judgment should not be pronounced. (See Pen. Code, §§ 1200, 1201.)

### Jurisdiction

Defendants' first contention, addressed to the jurisdiction of the court, is that the crime with which they were charged can only be a misdemeanor, and that therefore the superior court had no jurisdiction of the action. Defendants thus attack the subject matter jurisdiction of the court below. ▆ The jurisdiction of the superior court is generally confined to felonies, and if the jurisdiction of an offense exists in the municipal or justice court, the superior court has none. (*People* v. *Mulholland*, 16 Cal.2d 62, 64 [104 P.2d 1045]; *In re Joiner*, 180 Cal.App.2d 250, 254 [4 Cal.Rptr. 667].) This alleged jurisdictional defect was urged on the motion in arrest of judgment, and is properly urged on this appeal. (See Witkin, Cal. Criminal Procedure, § 24, p. 28; 1 Witkin, Cal. Procedure, § 182, p. 696.)

Defendants' contention finds its basis in the language of Penal Code section 320[6] which provides that "Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor." The thrust of defendants' argument is that each of the prohibited acts of the statute connotes a conspiracy, and that, since there is a conflict, the special misdemeanor statute (§ 320) controls over the general felony conspiracy statute (§ 182). It is also urged that if the misdemeanor statute controls, the action was barred by the one-year statute of limitations (§ 801).[7] Defendants thus rely on the rule that where the general statute standing alone would include the same matter as the special

---

[5]The pleading was entitled "Motion for a New Trial and Motion in Arrest of Judgment." The minute orders show that the "Motion for New Trial" was argued and submitted, and that "motion for a new trial herein, having been heretofore submitted ... is ... denied."

[6]All statutory references hereinafter, unless otherwise indicated, are to the Penal Code.

[7]The demurrer to the second amended indictment included the ground of the statute of limitations. Said indictment alleges that defendants conspired to do the acts therein alleged "on or about August 15, 1960" and that the specified overt acts occurred on August 17 and September 1, 1960. The original indictment was filed on October 19, 1962.

act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. (*In re Williamson*, 43 Cal.2d 651, 654 [276 P.2d 593]; *In re Joiner*, *supra*, at p. 253; *People* v. *Breyer*, 139 Cal.App. 547, 550 [34 P.2d 1065, 1067].)

Our inquiry is directed, therefore, to whether section 320 is a specific enactment which controls section 182, a general statute covering the field of conspiracies. One of the provisions of section 182 includes a conspiracy to "commit any crime." Section 320 does not contain within its provisions the use of or reference to the words "conspiracy" or "conspire." It is suggested by defendants in their briefs that the words "contrive," "set up" and "propose" in section 320 are words which connote a conspiracy. However, as indicated by counsel for defendants at oral argument, the focus of their argument is upon the word "propose."[8] The dictionary definition of "propose," in the sense used in the subject statute, is "to form or declare a plan or intention: ... to offer for consideration, discussion, acceptance, or adoption." (Webster's Third New Internat. Dict.)

It is a primary rule of construction that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*Chavez* v. *Sargent*, 52 Cal.2d 162, 203 [339 P.2d 801]; *Benson* v. *Superior Court*, 214 Cal.App.2d 551, 558 [29 Cal.Rptr. 760].) There is nothing in the language of section 320 which purports to include a conspiracy in its terminology.

A criminal conspiracy implies an *agreement* to commit a crime. (*People* v. *Malotte*, 46 Cal.2d 59, 65 [292 P.2d 517]; *People* v. *Buffum*, 40 Cal.2d 709, 715 [256 P.2d 317]; *People* v. *Marsh*, 58 Cal.2d 732, 743 [26 Cal.Rptr. 300, 376 P.2d 300].) "The gist of a criminal conspiracy is a corrupt agreement of *two or more* persons to commit an offense prohibited by statute, accompanied by some overt act in furtherance of the objects of the conspiracy." (*People* v. *Sica*, 112 Cal.App.2d 574, 580-581 [247 P.2d 72], italics added; *People* v. *Brownstein*, 109 Cal.App.2d 891, 892 [241 P.2d 1056]; §§ 182, 184.) The very first sentence of section 182 contains this language, to wit: "If two or more persons conspire:

[8]"Contrive" means to devise; plan or plot; it is synonymous with invent, frame and concoct. "Set up" means to put forward (as a plan) for acceptance; to institute, inaugurate, establish. (Webster's Third New Internat. Dict.)

..." Section 320, on the other hand, commences with the following language: "Every person who contrives. . . ."

It is obvious, therefore, that section 320 intends to punish *each* person who *does* the things therein prohibited, and that by its terminology it encompasses the conduct of *one* person. Within the purview of section 320 one person can commit the crime of proposing a lottery, i.e., one person can form or declare a plan or intention to form a lottery, and one person can offer such plan to another for his consideration, acceptance or adoption, and be guilty of the crime charged, without any agreement or assent on the part of the other person. Section 182, however, covers the situation where two or more person *agree* to do the things prohibited in section 320 whether they do them or not, provided they perform at least one overt act (which need not be criminal)[9] in furtherance of the corrupt agreement. Thus if two or more persons *agree* to devise, plan, plot or to institute, inaugurate or establish a lottery or if they *agree* that they will form or declare a plan for a lottery, or that they will offer a lottery for consideration, discussion, acceptance or adoption, and some act is committed to effect the object of such agreement, a criminal conspiracy is established. Moreover, conspiracy is a "specific intent" crime requiring that the accused have the specific intent to do an unlawful act or to do a lawful act by unlawful means (*People* v. *Marsh, supra,* pp. 743-744; *People* v. *Bowman,* 156 Cal.App.2d 784, 797-798 [320 P.2d 70]), while the crime described in section 320 is a "general intent" crime not requiring a specific intent as a part of the crime therein denounced. (*People* v. *Settles,* 29 Cal.App.2d Supp. 781, 784-785 [78 P.2d 274].)

The case of *In re Williamson, supra,* 43 Cal.2d 651, is distinguishable from the instant case in that the special act specifically used the word "conspires." The conflict there was between section 182 and section 7030 of the Business and Professions Code which, in pertinent part, read as follows: "Any person who acts in the capacity of a contractor without a license, and any person who conspires with any other person to violate any of the provisions of this chapter is guilty of a misdemeanor." The Supreme Court held that section 7030 was clearly a specific enactment which controlled section 182. Another case illustrative of the rule that a spe-

---

[9]*People* v. *Gordon,* 71 Cal.App.2d 606, 628 [163 P.2d 110]; *People* v. *Olf,* 195 Cal.App.2d 97, 107 [15 Cal.Rptr. 390].

cial act controls over a general statute with which it conflicts is *People* v. *Farina*, 220 Cal.App.2d 291 [33 Cal.Rptr. 794]. There the defendants were charged with conspiracy to tamper with a motor vehicle (§ 182). It was there urged that section 182 was in conflict with Vehicle Code section 10852, which provides: "No person shall either individually or in association with one or more other persons, wilfully injure or tamper with any vehicle...." The appeallate court held that by the use of the words " 'in association with one or more other persons' " the Legislature intended to reach those who conspire to violate its terms. (P. 294.)

In *People* v. *Van*, 30 Cal.App.2d 663 [87 P.2d 57], it was recognized that there can be a violation of section 182 by conspiring to violate section 320. The reviewing court, in considering section 182 as it then read (1939), held that the superior court did not have jurisdiction of the offense charged because the crime of conspiracy to operate a lottery was a misdemeanor in view of the language of section 182 making a conspiracy to commit any act injurious to public morals punishable in the same manner and to the same extent as that provided for the commission of the act itself. Section 182 was amended in 1943 to provide that a conspiracy to commit "any crime," including an act injurious to public morals, is punishable as a felony.[10] (See *People* v. *Malotte*, *supra*, 46 Cal.2d 59, 65-66.)

Defendants' second contention involving jurisdiction is that the court below did not have venue. The essence of this assertion is that the evidence was insufficient to support a finding that the conspiracy was formed in Contra Costa County or to establish the overt act which it is alleged in the third amended indictment occurred in said county. It should be pointed out that here we are concerned with statutory jurisdictional venue, and not with subject matter jurisdiction. The statutes require the trial of most offenses in the locality in which they were committed and they refer to the proper locality as the "jurisdictional territory." (§§ 691, subd. 3, and 777;[11] Witkin, Cal. Criminal Procedure, § 64, p.

---

[10]§ 182 provides in pertinent part: "When they conspire to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than three years, or by a fine not exceeding five thousand dollars ($5,000) or both."

[11]§ 777, in pertinent part, provides: "[A]nd except as otherwise provided by law the jurisdiction of every public offense is in any

62.) ■ Accordingly, with respect to felonies triable in the superior court the "jurisdictional territory" is the county; and the county in which the crime was committed is the proper venue, except where an alternative venue is provided by some other statute. (Witkin, Cal. Criminal Procedure, § 68, p. 66; *People* v. *Megladdery,* 40 Cal.App.2d 748, 762 [106 P.2d 84].) ■ Although there is authority in other jurisdictions that in conspiracy cases venue is either in the county of agreement or the county of the overt act (see Witkin, Cal. Criminal Procedure, § 78, p. 73; 72 Harv.L.Rev. 975), the California rule is that venue is in any county in which an overt act was committed by any of the conspirators. (*People* v. *Diaz,* 206 Cal.App.2d 651, 663 [24 Cal.Rptr. 367]; *People* v. *Benenato,* 77 Cal.App.2d 350, 357 [175 P.2d 296]; *People* v. *Buono,* 191 Cal.App.2d 203, 223 [12 Cal.Rptr. 604]; *People* v. *Northrup,* 203 Cal.App.2d 470, 476 [21 Cal. Rptr. 448]; §§ 182, 184, 781;[12] Witkin, Cal. Criminal Procedure, § 78, p. 73.)

In the present case Count One of the indictment charges that a conspiracy was formed in Contra Costa County and that two overt acts, in furtherance thereof, were committed: one in Alameda County, and the other in Contra Costa County. [13] As Overt Act 1, it is alleged that defendants caused lottery tickets to be printed in Alameda County; and, as Overt Act 2, that defendants forged a certain chattel mortgage in Contra Costa County. The allegation of Overt Act 2 sufficed to render the indictment invulnerable to demurrer insofar as venue is concerned. [14] Venue in a criminal case, however, is a question of fact; but it need only be proved by a preponderance of the evidence, and it may be

competent court within the jurisdictional territory of which it is committed."

[12]§ 182, in pertinent part, provides: "All cases of conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy shall be done." § 184 reads as follows: "No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement and the trial of cases of conspiracy may be had in any county in which any such act be done." § 781 provides: "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

proved by either direct or circumstantial evidence. (*People* v. *Montgomery*, 32 Cal.App.2d 43, 45 [89 P.2d 184]; *People* v. *Megladdery*, *supra*, at pp. 762-766; *People* v. *Harkness*, 51 Cal.App.2d 133, 139 [124 P.2d 85]; *People* v. *Kutz*, 187 Cal. App.2d 431, 434 [9 Cal.Rptr. 626].) In a jury trial, the determination of this fact rests with the jury. (*People* v. *Megladdery*, *supra*, at p. 762.) In the instant case the record discloses sufficient evidence to establish the corrupt agreement. The evidence was also sufficient to establish Overt Act 1; however, it was insufficient to establish Overt Act 2. There was no evidence that defendants forged any chattel mortgage, nor that the chattel mortgage which was the subject of the allegation was in any way connected with, or was in furtherance of the alleged conspiracy.[13] [15a] We thus have a situation where the overt act alleged to have been committed in Contra Costa County was not proved, but that which was alleged to have occurred in Alameda County was established. If the case was left in this posture there would have been no evidence supporting an inference of venue in Contra Costa County, and the trial court would have been obliged to grant the motion for new trial on the ground of insufficiency of the evidence under subdivision 6 of section 1181, i.e., that the verdict is contrary to the evidence. (See *People* v. *Megladdery*, *supra*, at pp. 762-766.) The record discloses, however, evidence of overt acts occurring in Contra Costa County. The driving in the automobile from Berkeley[14] to O'Sullivan's Restaurant in El Cerrito to discuss the lottery venture was a continuous overt act. (*People* v. *Buono*, *supra*, at p. 223; *People* v. *Anderson*, 90 Cal.App.2d 326, 330-331, 334 [202 P.2d 1044].) In *Buono*, the court, relying upon section 781, said: "Where an overt act is a continuous one, such as driving from Los Angeles to San Diego, it suffices to fix the jurisdiction in either county." (P. 223.) When Jones,

---

[13] It is not urged or contended by the People that this overt act was proved. We note that the same overt act, moreover, was charged in the second count of the indictment charging a conspiracy to commit grand theft upon which charge defendants were acquitted.

[14] We can take judicial knowledge that El Cerrito is in Contra Costa County, as we judicially notice that Albany and Berkeley are in Alameda County, and Benicia in Solano County. (*People* v. *Wright*, 79 Cal.App. 523, 525 [250 P. 204]; *Guardianship of Casella*, 133 Cal.App. 80, 81 [23 P.2d 782]; *People* v. *Vicencio*, 71 Cal.App.2d 361, 363-364 [162 P.2d 650]; *People* v. *Ford*, 133 Cal.App.2d 695, 697 [284 P.2d 836]; *People* v. *Bastio*, 55 Cal.App.2d 615, 617; [131 P.2d 614]; *People* v. *Kutz*, 187 Cal.App.2d 431, 434 [9 Cal.Rptr. 626].)

Holliday, Sipe and David met in O'Sullivan's Restaurant, in El Cerrito, to discuss the lottery and to instruct David concerning the printing of the tickets another overt act occurred. [16] Although Bailey was not present on this occasion he was, nevertheless, bound by the overt acts committed by the other conspirators because all members of the conspiracy are bound by all acts of the members done in furtherance of the agreed plot. (*People* v. *Northrup, supra,* at p. 476; *People* v. *Pierce,* 110 Cal.App.2d 598, 610 [243 P.2d 585].) Although these overt acts were not alleged in the indictment, evidence thereof was properly received. Section 1104 provides, in part, that "where an overt act is necessary to constitute the offense, the defendant cannot be convicted unless one or more overt acts are expressly alleged in the indictment or information, nor unless one of the acts alleged is proved; but other overt acts not alleged may be given in evidence." These overt acts were proved, and had they been alleged in the indictment, there would be no question that territorial jurisdiction was established. We are thus confronted with the question whether the failure to allege these overt acts precludes proof of venue because of the variance between the allegations of the indictment and the proof. It is convenient to note here that if Contra Costa County has jurisdiction, the requirement of section 1104 that at least one of the overt acts alleged in the indictment must be proved, is satisfied, because Overt Act 1 was proved. (See *People* v. *Northrup, supra,* at p. 476.)

Although it is elementary in criminal law that the proof must correspond with the allegations in the accusatory pleading, it is a generally accepted rule that a variance between such allegations and the proof is not regarded as material unless it is of such substantive character as to mislead the accused in preparing his defense, or is likely to place him in danger of being twice put in jeopardy for the same offense. (*People* v. *Williams,* 27 Cal.2d 220, 225-226 [163 P.2d 692]; *People* v. *LaMarr,* 20 Cal.2d 705, 711 [128 P.2d 345].) In the instant case defendants do not maintain that they were misled in the preparation of their defense or that they are likely to be placed in second jeopardy for the same offense. We are satisfied that they cannot successfully maintain that they may again be placed in jeopardy for the same offense. It is apparent from a reading of the record that they were not misled in the preparation of their defense. Although the grand jury transcript has not been

made a part of the record on appeal, it appears from the record that David testified before the grand jury, that he was cross-examined extensively at the trial concerning his testimony before the grand jury, and that it was sought thereby to impeach him. David was particularly cross-examined concerning the meeting at O'Sullivan's Restaurant. ▮▮ In the absence of any showing to the contrary, we are entitled to presume that official duty was regularly performed and that a copy of the grand jury transcript was furnished to defendants or their attorney in advance of trial pursuant to section 938.1. (Code Civ. Proc., § 1963, subd. 15.) Moreover, prejudice must be affirmatively established by the appealing party. (*People* v. *Horwitz,* 70 Cal.App.2d 675, 704 [161 P.2d 833]; *People* v. *Horiuchi,* 114 Cal.App. 415, 437 [300 P. 457]; *People* v. *Walker,* 150 Cal.App.2d 594, 603 [310 P.2d 110].) ▮▮ In the present case no prejudice to the preparation of defendants' case has been shown, nor is any claimed.

In *People* v. *Flowers,* 202 Cal.App.2d 311, 313 [20 Cal. Rptr. 778], it is stated: "Variance is not fatal where the pleadings allege the commission of a crime in one county so long as some act of a series of acts of the crime charged do occur in that county." There the indictment charged defendant with the sale of narcotics in Sacramento County. The evidence showed that the money for the sale had been passed in Yolo County, but that preliminary arrangements for the sale had been made in Sacramento County. Similarly, in *People* v. *Waid,* 127 Cal.App.2d 614 [274 P.2d 217], the offense of bringing drugs into a state prison was consummated in San Bernardino County, but the information charged that the offense was committed in Los Angeles County from whence the drugs were sent by mail. The reviewing court in upholding the jurisdiction of the Los Angeles court held that there was no fatal variance where the pleadings allege the commission of a crime in one county even though the evidence proves the crime was committed by a series of acts, some of which were done in one county and some in another. In *People* v. *De Martini,* 25 Cal.App. 9 [142 P. 898], it was held that there was no variance between the information and the evidence where the information alleged that the crime was committed in the City and County of San Francisco and the evidence showed that it was committed partly there and partly in another county.

In the light of the foregoing principles, we are satisfied

that there was no fatal variance between the allegations of the indictment and the proof, and that since overt acts were committed in Contra Costa County, the superior court of that county had jurisdiction to try the case.

## Probable Cause

Defendants contend that the trial court erred in denying their motion to dismiss the indictment under section 995 for lack of probable cause. We cannot consider this alleged error since the proceedings before the grand jury have not been brought to this court on appeal. (*People* v. *Scott,* 24 Cal.2d 774, 777 [151 P.2d 517]; *People* v. *Northrup, supra,* 203 Cal.App.2d 470, 477; *People* v. *Angell,* 192 Cal.App.2d 551, 559 [13 Cal.Rptr. 637]; *People* v. *Walker,* 170 Cal.App. 2d 159, 163 [338 P.2d 536].) Assuming that the evidence produced before the grand jury was the same as that presented at the trial, there was reasonable or probable cause to indict defendants.

## Misjoinder

Defendants also contend that there was a misjoinder of offenses in the indictment and that the trial court committed error when it overruled the demurrer thereto. The demurrer on this ground which was overruled by the trial court was to the second amended indictment. However, as we have already pointed out, the People filed a third amended indictment, by leave of court, to which no demurrer was interposed. An amended accusatory pleading supersedes the pleadings previously filed. (*Muns* v. *Superior Court,* 137 Cal.App.2d 728, 732 [290 P.2d 951]; *Owens* v. *Traverso,* 125 Cal.App.2d 803, 808 [271 P.2d 164]; *Johns* v. *Mongan,* 190 Cal.App.2d 94, 97 [11 Cal.Rptr. 673].) Accordingly, the second amended indictment had no function as a pleading. Therefore, any objection to the claimed misjoinder should have been urged as against the third amended indictment upon which the cause proceeded to trial. "All objections appearing on the face of an indictment are waived by failure to demur before plea except as to jurisdiction of the court over the subject matter of the indictment and failure to state facts sufficient to constitute a public offense." (*People* v. *Curry,* 192 Cal.App.2d 664, 669 [13 Cal.Rptr. 596]; *People* v. *Brac,* 73 Cal.App.2d 629, 635 [167 P.2d 535]; §§ 1004, 1012.) Misjoinder is a ground which may only be raised by demurrer. (*People* v. *Cummings,* 173 Cal. App.2d 721, 730 [343 P.2d 944]; *People* v. *Stone,* 199 Cal.

610, 624 [250 P. 659]; *People* v. *Palumbo,* 127 Cal.App. 703, 705-706 [16 P.2d 316]; § 1004, subd. 3.) ▮▮▮▮ By failing to demur to the third amended indictment, defendants waived the alleged misjoinder. (§ 1012.)

### *Instructions*

The trial court instructed the jury "that it is unlawful to contrive, prepare, set up, propose or draw a lottery." ▮▮▮▮ Defendants claim that the court should have instructed the jury that there is a distinction between a conspiracy to establish a lottery in California and one to be conducted in Nevada. They assert that there is evidence in the present case from which the trier of fact could have inferred that the agreement reached in California was to set up and operate a lottery in Nevada where such an operation is legal. Thus, they argue, there can be no criminal conspiracy where the agreement is to do a lawful act. The record discloses that no instruction was requested by defendants making any distinction as between a lottery to be conducted in California and one in Nevada. The instruction, tendered by defendants and refused by the court, which they assert was a declaration of the principle urged by them was a general instruction defining a conspiracy in the form suggested by CALJIC No. 931. This instruction is no more than a restatement of the statutory language contained in sections 182 and 184. ▮▮▮▮ The proffered instruction was a correct statement of the law, but the trial court was not required to give it as long as the jury was properly instructed. (*People* v. *Galvan,* 208 Cal.App.2d 443, 452 [25 Cal.Rptr. 128].) In the instant case the jury was properly instructed on the law of conspiracy in the form of CALJIC No. 931 (revised 1962), a more concise statement of the rule, and in other instructions applicable to the law of conspiracy with which defendants find no fault.

We need not consider, moreover, whether the trial court should have given on its own motion an instruction declarative of the theory propounded by defendants because such an instruction would not have been proper. In reaching this conclusion we are not unmindful that statutes must be construed in the light of the general principle that, ordinarily, a state does not impose punishment for acts done outside its territory. (*People* v. *Buffum, supra,* 40 Cal.2d 709, 716; see *People* v. *McGowan,* 127 Cal.App. 39, 42 [14 P.2d 1036].) ▮▮▮▮ We are satisfied, moreover, from a reading of section

320 that the Legislature did not intend to regulate conduct outside the borders of California, but that its purpose was to regulate conduct *within* this state. Section 320 does not prohibit or proscribe a lottery in another state, but makes it unlawful to contrive, prepare, set up, propose, or draw any lottery *in this state.* The position taken by defendants is based upon an erroneous concept of the meaning of a lottery. The notion of a lottery entertained by defendants is one that is reduced to the narrow confines of the physical act of *drawing* a lottery. ▉ If we accept defendants' argument we would be constrained to hold that it is perfectly proper and legal to plan, devise, plot, set up, institute, establish, form, or offer for acceptance a lottery in California as long as the actual drawing takes place in another state. But such conduct is exactly what section 320 proscribes. Section 319 defines a lottery as follows: ''A lottery is any *scheme* for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift-enterprise, or by whatever name the same may be known.''[15] (Italics added.) ▉ It is apparent from a reading of the statute that a lottery is a *scheme* for the disposal or distribution of property by chance upon the payment of or promise to pay a consideration, and that there can be a lottery whether or not a drawing is ever held. ▉ Accordingly, section 320 proscribes the scheme as well as the drawing pursuant to the scheme. It should be particularly noted here that defendants were not charged in the indictment with a conspiracy to *draw* a lottery, but only with a conspiracy to commit the crime of contriving, preparing, setting up and proposing a lottery. ▉ We are persuaded, moreover, that the public policy of this state, as declared by the Legislature in the enactment of comprehensive statutes applicable to lotteries (ch. IX, §§ 319-326), is against not only a drawing held in this state pursuant to the lottery scheme, but also against the planning, establishing and setting up of such scheme in this state although the operation of the lottery and the actual drawing pursuant thereto are to take place in another state.

---

[15]In its instructions to the jury the court below defined a lottery in the language of this statute.

Defendants rely upon *Buffum,* where the defendants were charged with a conspiracy to violate section 274 (criminal abortion). The question there presented was whether there could be a conspiracy in California to perform abortions in Mexico. The Supreme Court noted that because the statute made no reference to the place of performance of an abortion it assumed that the Legislature did not intend to regulate conduct taking place outside the borders of this state. The reviewing court accordingly held that California has no jurisdiction to punish a conspiracy to commit extraterritorial acts whether they be criminal or not criminal.[16] *Buffum* is distinguishable from the present case in that here defendants were charged with conduct which took place within the borders of this state and was prohibited by section 320. The court below, moreover, took cognizance of the rule in *Buffum* and instructed the jury that "if all of the acts constituting such crime are to be committed in another state" defendants could not be convicted of the crime of a conspiracy to commit the crime charged in the indictment.[17] The foregoing claims of error respecting the trial court's instructions are, therefore, without merit.

Defendants contend, further, that the evidence supports an inference that David was an accomplice in the alleged conspiracy. Accordingly, they argue that his testimony should have been corroborated, and the trial court erred in not instructing the jury on the law of accomplices and the necessity of corroboration of accomplice testimony. The trial court refused all of defendants' instructions relating to the definition of an accomplice, accomplice testimony, and the necessity of corroboration of such testimony.[18]

---

[16]*Buffum* considered whether the defendants could be convicted of an attempt to violate section 274, although they were not so charged in the indictment. Although the Supreme Court held that the evidence there fell short of an attempt it indicated that pursuant to sections 27, subd. 1, and 778a one may be convicted of an attempt to commit a crime in another state where the acts done in this state amount to an attempt.

[17]The trial court's instruction reads as follows: "There must be some appreciable fragment of the crime, some overt act tending toward commission of the crime, committed in the State of California, and you may not convict the defendants of conspiracy to commit the crime of contriving, preparing, setting up or proposing a lottery if all of the acts constituting such crime are to be committed in another state."

[18]In refusing the proffered instructions the trial court made the following statement: "I don't see any testimony that he—David was a member of this partnership. *David may have given an inference* he was

An accomplice is one "who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (§ 1111.)[19]   One who is a party to a conspiracy and active in carrying out its object is an accomplice. (*People* v. *Avas*, 144 Cal.App.2d 91, 97 [300 P.2d 695]; *People* v. *Jehl*, 150 Cal.App.2d 665, 668 [310 P.2d 495]; *People* v. *Talbott*, 65 Cal.App.2d 654, 660-661, 665 [151 P.2d 317]; *People* v. *Le Grant*, 76 Cal.App.2d 148, 152 [172 P.2d 554].)   In order to come within the definition of an accomplice a person must have guilty knowledge and intent with regard to the commission of the crime. (*People* v. *Duncan*, 53 Cal.2d 803, 816 [3 Cal.Rptr. 351, 350 P.2d 103].) "In other words, one is an accomplice who knowingly, voluntarily and with common intent with the principal offender unites in the commission of the crime." (*People* v. *Shaw*, 17 Cal.2d 778, 799 [112 P.2d 241]; *People* v. *Lamb*, 134 Cal.App.2d 582, 585 [285 P.2d 941].)   Whether a witness for the prosecution is or is not an accomplice may be a question of law or fact.   Where the facts with respect to the participation of a witness in the crime for which the accused is on trial are clear and not disputed, it is for the court to determine whether he is an accomplice; but where, although there is evidence tending to connect the witness with the crime, the facts are disputed or susceptible of different inferences, the question of complicity should be submitted to the jury. (*People* v. *Lamb*, *supra*, at p. 586; *People* v. *Coffey*, 161 Cal. 433, 436 [119 P. 901, 39 L.R.A. N.S. 704]; *People* v. *Duncan*, *supra*, pp. 816-817; *People* v. *Featherstone*, 67 Cal.App.2d 793, 796 [155 P.2d 685]; *People* v. *Ellis*, 137 Cal.App.2d 408, 413 [290 P.2d 266]; *People* v. *Platnick*, 161 Cal.App.2d 313, 320 [326 P.2d 585].)   Where such witness is an accomplice as a matter of law, the court should so charge, and an instruction defining an accomplice is not necessary.

---

involved, but I'm satisfied he was not acting in concert with these people to set up any lottery." (Italics added.)

[19]The pertinent statutory law applicable to accomplices is found in section 1111, which reads as follows: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

Conversely, where, as a matter of law, the witness is not an accomplice, the court does not err in refusing to charge that he is or in refusing to submit the issue to the jury. But where it is for the jury to determine whether or not the witness is an accomplice, the court should so charge, and should instruct as to what constitutes an accomplice. (*People* v. *Featherstone, supra,* at p. 797; 23A C.J.S. § 1227, pp. 564, 567-569.)

Under the evidence in the instant case, we believe it was for the jury to determine, under proper instructions, whether or not David was an accomplice. We do not believe that, as a matter of law, the evidence compels the conclusion that David knowingly aided or promoted the conspiracy, nor do we believe that the extent and the nature of his participation in the lottery scheme was such as to compel a finding, as a matter of law, that he was not an accomplice. We do believe, however, that the facts tending to connect David with the crime are susceptible of different inferences. The record discloses that David attended the luncheon in El Cerrito where the lottery venture was discussed in detail; that he was given instructions regarding the printing of the lottery tickets; that he printed and delivered a substantial number of lottery tickets; and that he refused to deliver the balance of the tickets printed by him until he received payment for them. From this evidence, the jury would be justified in inferring that he had guilty knowledge and intent with regard to the commission of the crime charged.

The trial court therefore erred in failing to instruct the jury on the law of accomplices, and that if it found David to be an accomplice, his testimony should be viewed with distrust (Code Civ. Proc., § 2061, subd. 4) and would require corroboration to support a conviction. (§ 1111.) David's testimony was crucial. The prosecution's case was built substantially around it. He was the only witness who testified concerning the conversations at O'Sullivan's Restaurant in El Cerrito. Jones, who testified on his own behalf, denied having met with David in O'Sullivan's Restaurant. He testified that he met David on only two occasions, and that these meetings took place at David's printing shop. He also denied that he told David that the tickets were to be used in California. As concerns Bailey, there is nothing in the record to show that he had any contact with David. No overt act on his part was shown. His guilt was predicated upon the acts and declarations of his coconspirators, and, to

a great measure, upon those of Jones. Under the circumstances we conclude that the instructions on accomplice testimony were essential; that "it is reasonably probable that a result more favorable" to defendants "would have been reached in the absence of the error"; and that, accordingly, the error is prejudicial. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is reversed as to each defendant and the appeal from the order denying the motion for new trial is dismissed.

Bray, P. J., and Sullivan, J., concurred.