UNITED STATES of America,
Plaintiff-Appellee,

v.

Lorchid GOFF, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Deola R. RICHARDSON,
Defendant-Appellant.

Nos. 74–2648, 74–2847.

United States Court of Appeals,
Fifth Circuit.

March 13, 1975.

Rehearing Denied April 9, 1975.

---

826

Richard B. Sobol, Anne Pardee Buxton, Leesburg, Va., David J. Dennis, New Orleans, La., Richard T. Seymour, Washington, D. C., Jack Greenberg, Charles Stephen Ralston, New York City, for defendants-appellants.

Gerald J. Gallinghouse, U. S. Atty., James J. O'Connor, Mary Williams Cazàlas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and ROSENN *, Circuit Judges.

THORNBERRY, Circuit Judge:

In these appeals two criminal defendants claim that we must reverse their mail fraud convictions[1] since the jury selection process in their cases violated the standards of the Jury Selection Act of 1968. 28 U.S.C. § 1861 et seq. In the district court, appellants properly filed a timely motion to dismiss the indictments for failure to comply with the Jury Selection Act. 28 U.S.C. § 1867(a). They based their challenge to the Eastern District of Louisiana's jury pool on inadequate representation of blacks, and poor people. The district court denied the motion, finding that there was no substantial underrepresentation of blacks, and that poor people did not constitute a cognizable class under 28 U.S.C. § 1862.[2] We agree that appellants have failed to show substantial underrepresentation of blacks. Since we reach the same conclusion as to poor people, we do not consider whether they are a cognizable class under the Jury Selection Act of 1968. Thus, finding no infirmity in the Eastern District of Louisiana jury selection procedures, we affirm the convictions.

## UNDERREPRESENTATION OF BLACKS:

Appellants' statistics showed that in 1970 (the date of grand jury selection) blacks comprised 26.33% of the voting age population and 21.06% of the registered voters in the Eastern District of Louisiana. Thus there was a 5.27% absolute differential between blacks in the voting age population and registered black voters, and a 20.02 percentage underrepresentation of blacks on the jury list.[3] The court below found that this underrepresentation was not substantial within the meaning of the Jury Selection Act after assessing the impact of this underrepresentation on a grand jury of twenty-three persons. 370 F.Supp. at 302–04. A grand jury that statistically mirrored the voter registration list would contain 4.6 black persons, while one statistically mirroring the voting age population would contain 6.0 black persons. The court concluded that this amount of underrepresentation was not sufficiently substantial to require the

---

* Of the Third Circuit, sitting by designation.

1. The government charged that the appellants fraudulently received welfare benefits, a violation of 18 U.S.C. § 1341.

2. The full text of that opinion is found in United States v. McDaniels, 370 F.Supp. 298 (E.D.La. 1973).

3. Neither the absolute nor the comparative measure of underrepresentation can be considered determinative of the substantiality question. See Gewin, An Analysis of Jury Selection Decision, 506 F.2d 811, 834–35 (1975) (printed as an appendix to Foster v. Sparks, 506 F.2d 805 (5th Cir. 1975)).

Eastern District of Louisiana to supplement its voter registration list. 28 U.S.C. § 1863. We hold that the district court properly disposed of that issue. *See* United States v. McDaniels, 370 F.Supp. 295, 302–04 (E.D.La.1973).

## UNDERREPRESENTATION OF FOOD STAMP RECIPIENTS:

■ The district court also examined the underrepresentation of the class of food stamp recipients in the Eastern District of Louisiana on the jury list.[4] The appellants' statistics demonstrated that in the Eastern District only 30.03% of the food stamp recipients over twenty-one are registered to vote. In contrast 77.76% of the remainder of the voting age population have registered.[5] The district court felt these figures proved substantial underrepresentation, concluding, ". . . food stamp recipients, as a group, are 47.73% underrepresented on voters registration list." 370 F.Supp. at 304. The district court erred in concluding that this underrepresentation on the voters' registration list thereby established an underrepresentation on the grand jury list. The above statistics show only the registration rate differential between food stamp recipients of voting age and the voting age population at-large. That figure, however, does not accurately disclose the impact of that registration differential on the jury list. We think the district court should have proceeded to assess the impact of this registration rate differential on a typical grand jury, just as it did in the case of blacks. The figures showed that food stamp recipients constitute 10.51% of the voting age population, and 4.34% of those on the jury list. Thus a twenty-three person grand jury that mirrored the jury list would contain 1.0 food stamp recipients, while one that mirrored the voting age population would contain 2.4 food stamp recipients. The registration rate differential has the same impact as in the case of blacks. We find this underrepresentation is not so substantial as to require supplementation of the voter registration list. Thus we express no view on the cognizability of the class of food stamp recipients or poor people under 28 U.S.C. § 1862.

■ Our result comports with the underlying purposes of the Jury Selection Act of 1968. The Act primarily sought to eliminate the "key man" system in the federal jury selection process. Congress felt that utilization of voter registration lists as the primary source of names for the master jury list would provide a more representative cross section of the community. That body recognized that in some instances, failure of particular groups in a community to register would mean that the voter registration list would not accurately represent a fair cross section of the community. But where, as in this case, the impact of the underrepresentation does not substantially affect the composition of the average grand jury, the Act does not require the district to incur the substantial expense and administrative inconvenience necessary to supplement the voter registration list.[6]

Affirmed.

---

4. Appellants defined "poor people" for the purpose of their challenge as "food stamp recipients." They took a statistically significant sample of food stamp recipients and checked to see how many of those names appeared on the voter registration lists in Eastern District of Louisiana parishes. The measure of economic status, then, was whether a prospective juror qualified for food stamp assistance rather than an absolute dollar ceiling on income.

5. Appellants point out that their figures probably understate the differential because not all poor people register for food stamps. Brief for Appellants at 24–26. But in this case, there is no indication of the steps taken to purge the voter registration list. Failure to do so would tend to offset the understatement. See Gewin, The Jury Selection and Service Act of 1968: Implementation in the Fifth Circuit Court of Appeals, 20 Mercer L.Rev. 349, 369 (1969).

6. Our analysis is similar to that of the Second Circuit in United States v. Jenkins, 496 F.2d 57 (2d Cir. 1974).