[L.A. No. 32209. Jan. 2, 1987.]

EDDIE O'HARE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Robert F. Gusky for Petitioner.

Mitchell Zimmerman, Sally M. Abel, Fenwick, Davis & West and Geraldine S. Russell as Amici Curiae on behalf of Petitioner.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Bruce W. Beach, Deputy County Counsel, for Respondent.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman, Sally J. Penso and Paul M. Morley, Deputy District Attorneys, for Real Party in Interest.

John K. Van de Kamp, Attorney General, John W. Carney, Frederick R. Millar, Jr., and Tim J. Nader, Deputy Attorneys General, Christopher N. Heard, Cecil Hicks, District Attorney (Orange), Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Franklin L. Carroll, Deputy District Attorneys, as Amici Curiae on behalf of Real Party in Interest.

OPINION

THE COURT.—In this proceeding, defendant challenges the jury selection procedure of the North County Branch of the San Diego Superior Court, contending that the selection procedure is invalid insofar as it draws jurors to serve in criminal cases from only a portion of San Diego County, rather than from the county as a whole. After decision by the Court of Appeal, Fourth Appellate District, Division One, upholding the validity of the procedure, we granted review to give further consideration to the important issues presented. After reviewing the matter, we have concluded that the opinion of the Court of Appeal authored by Justice Howard B. Weiner and concurred in by Justice Edward T. Butler correctly analyzes and disposes of the issues involved and we adopt such opinion as and for the opinion of this court. Such opinion (with appropriate deletions and additions) is as follows:*

---

*Brackets together, in this manner [ ] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote our insertions or additions. (See *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 267 [118 Cal.Rptr. 249, 529 P.2d 1017].) The footnotes of the Court of Appeal opinion which have been retained have been renumbered sequentially for purposes of this opinion.

This case presents the important issue whether the North County Branch of the San Diego Superior Court violates the constitutional rights of criminal defendants charged with felonies when it limits selection of jurors to a venire taken from the North County Municipal Court Judicial District rather than one taken from San Diego County as a whole.

■■■■ Eddie O'Hare, charged by information with kidnapping (Pen. Code, § 207), assault by means of force likely to produce great bodily injury (Pen. Code, §§ 273d), wilful cruelty to a child (Pen. Code, § 273a, subd. (2)), and false representation of identity to a police officer (Pen. Code, § 148.9), seeks to compel transfer of his felony trial from the North County Branch to the San Diego Downtown Branch contending the jury venire in North County contains a significantly lower percentage of jury-eligible Black persons than does the venire for the Downtown Branch.[1] He relies primarily on the Sixth Amendment guarantee[2] of a jury drawn from a representative cross-section of the community, as interpreted by [the] decision in *Johnson* v. *Superior Court* (1984) 163 Cal.App.3d 85 [209 Cal.Rptr. 425]. The holding in *Johnson,* however, is not nearly so broad as O'Hare suggests. After reviewing the extensive federal and significant California precedent in this area, as well as considering the historical roots of the Sixth Amendment, we conclude there is no constitutional impediment to designation of the North County Municipal Court Judicial District as the "community" from which jurors are to be drawn for sessions of the North County Branch of the San Diego Superior Court. We also reject O'Hare's contention that because the North County Branch has not been legislatively designated as a "judicial district," there is insufficient legislative authorization for the use of a venire drawn from any area less than the entire County of San Diego.

## FACTUAL AND PROCEDURAL BACKGROUND

Since 1970, the Legislature has required that the San Diego County Superior Court hold daily sessions in Vista, a city in Northern San Diego

---

[1] The request for transfer is moot as to O'Hare because the trial court has agreed to transfer his trial to the Downtown Branch. The parties have, however, stipulated that the petition and responses not be withdrawn because the issue concerning the North County jury venire is an issue of continuing public interest which will recur. [ ] We have discretion to decide the issue. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 144 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135, 137, fn. 1 [192 Cal.Rptr. 388].)

[2] O'Hare makes no contention that his rights under the California Constitution (see art. I, § 16) are greater than those guaranteed by the Sixth and Fourteenth Amendments.

County. (Gov. Code, § 69595.5.) The North County Branch of the San Diego Superior Court sitting in Vista was created by local court venue rules to implement this legislative requirement. Those rules divide the County roughly in half and, with certain exceptions,[3] require that actions arising in North County be originally filed in the North County Branch. (Super. Ct. Rules, div. III, § 1, rule 1.3.)

Before the decision in *Johnson* v. *Superior Court, supra,* 163 Cal.App.3d 85, North County jurors were drawn from the master list for the Fifth Supervisorial District. In response to *Johnson,* the system was modified in March 1985 so that all jurors summoned for service in both the North County Branch of the Superior Court and the Municipal Court of the North County Judicial District are now drawn solely from the North County Judicial District.[4] The North County Judicial District is larger than the Fifth Supervisorial District, but the increase in size did not change the percentage of jury-eligible Black persons in the jury panel. Although the North County jury panel fairly reflects the jury-eligible Black community as it exists in North County, it does not reflect the percentage of Black persons in San Diego County as a whole.

O'Hare was arraigned on January 8, 1985, in the North County Branch and entered a plea of not guilty. In March, after initiation of the new jury selection procedure, O'Hare filed a petition for writ of mandate with [the Court of Appeal] asking to have his case transferred to the Downtown Branch of the superior court. The petition was denied without prejudice on grounds O'Hare had made no showing the venire would not be reflective of the community. (D002866, order dated Mar. 15, 1985.) O'Hare then filed a motion in the superior court to transfer venue to the Downtown Branch. The motion was denied with the following findings:

"1. The geographical area served by the North County Branch of the Superior Court and the North County Judicial District is identical.

"2. Jury veniremen for the North County Branch of the Superior Court are drawn from the North County Judicial District. The North County Branch of the Superior Court and the Municipal Court of the North County Judicial District utilize the same jury venire.

---

[3] For our purposes, the principal exception appears to be that all cases initiated by grand jury indictment are filed in the Downtown Branch, regardless of where the crime was committed.

[4] We *refer to* the geographical area from which jurors for the North County Branch are drawn as the North County Judicial District. We recognize that this area is technically a "judicial district" for municipal but not superior court purposes.

"3. The North County Judicial District is a community for purposes of assessing the composition of the jury venire.

"4. The composition of blacks in the community and the jury venire are not disparate.

"5. The composition of the jury venire served by the geographical area of the North County Branch of the Superior Court and the North County Judicial District is identical, not disparate, and representative of the community.

"Therefore, the motion of the defendant to transfer the case to the downtown court house for trial is denied." O'Hare then filed a second petition for writ of mandate which was denied [by the Court of Appeal] on grounds there was no abuse of discretion. [W]e granted O'Hare's petition for review of the denial of his petition for writ of mandate. On transfer of the matter, [the Court of Appeal] issued an alternative writ.

## DISCUSSION

O'Hare's fundamental contention is that he is constitutionally entitled to a jury drawn from the entire County of San Diego rather than some construct of a northern county subdivision.

### I.

The Sixth Amendment right to an "impartial jury,"[5] which undergirds most of the constitutional law applicable to jury selection procedures, has been interpreted to entitle a criminal defendant to a jury "selected from a fair cross section of the community." (*Duren* v. *Missouri* (1979) 439 U.S. 357, 359 [58 L.Ed.2d 579, 583, 99 S.Ct. 664]; see also *Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217, 220 [90 L.Ed. 1181, 1184, 66 S.Ct. 984, 166 A.L.R. 1412]; *Brown* v. *Allen* (1953) 344 U.S. 443, 474 [97 L.Ed. 469, 498, 73 S.Ct. 397]; *Williams* v. *Florida* (1970) 399 U.S. 78, 100 [26 L.Ed.2d 446, 460, 90 S.Ct. 1893]; *Taylor* v. *Louisiana* (1975) 419 U.S. 522, 527 [42 L.Ed.2d 690, 696, 95 S.Ct. 692].) Virtually all the decisions in this area focus on the use of the jury selection process to exclude cognizable groups within that community, such as women, racial minorities or wage earners. (See, e.g., *Duren, supra,* 439 U.S. 357 [women]; *Taylor,*

---

[5] The text of the Sixth Amendment provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, [which district shall have been previously ascertained by law] . . . ."

*supra,* 419 U.S. 522 [women]; *Alexander* v. *Louisiana* (1972) 405 U.S. 625 [31 L.Ed.2d 536, 92 S.Ct. 1221] [Blacks]; *Thiel, supra,* 328 U.S. 217 [wage earners]; *Smith* v. *Texas* (1940) 311 U.S. 128 [85 L.Ed. 84, 61 S.Ct. 164] [Blacks]. [Court of Appeal brackets.]) ■ ■ ■ ■ Less frequently addressed is the question of what constitutes the "relevant community" from which a fair cross-section must be drawn to comprise the venire.[6]

It is important to recognize at the outset that this issue of "community" is related to but nonetheless distinct from questions of "vicinage." ■ As interpreted by [the California] Supreme Court in *People* v. *Jones* (1973) 9 Cal.3d 546, 551 [108 Cal.Rptr. 345, 510 P.2d 705], the Sixth Amendment includes the requirement that the defendant be tried by a jury drawn from an area which includes the location of the crime, or, in other words, "a jury of the vicinage.'"[7] (See also *Williams* v. *Florida, supra,* 399 U.S. at pp. 93-96 [26 L.Ed.2d at pp. 456-458].) Here, there is no question but that O'Hare's jury would be drawn from an area which includes the location of the crime.

■ O'Hare suggests, however, that the Sixth Amendment's cross-sectional requirement implies an additional limitation on the government's power to define the "community" against which the demographics of the venire are measured. In other words, O'Hare's argument is not a *procedural* one, questioning the means by which the venire was selected from an agreed-upon community. (Compare, e. g., *Duren* v. *Missouri, supra,* 439 U.S. 357 [58 L.Ed.2d 579] [challenging the effect of state statute automatically excluding women on [their] request]; *People* v. *Harris* (1984) 36 Cal.3d 36 [201 Cal.Rptr. 782, 679 P.2d 433] [challenging the exclusive use of voter registration lists in choosing the venire]. [Court of Appeal brackets.]) Instead, he focuses on the notion of "community" itself, asserting that in addition to a means-oriented limitation, the Sixth Amendment also imposes a *substantive* requirement as to the size of the community which may serve as the source of the venire. Thus, according to O'Hare, the government cannot create artificially small judicial districts which distort

---

[6]Obviously, once it is established that there is a significant disparity between the demographics of the venire and the demographics of the "community," it becomes incumbent on the government to demonstrate a compelling state interest to support the disparity. (See *Johnson* v. *Superior Court, supra,* 163 Cal.App.3d [85,] 88.) Here, because we conclude the relevant "community" is the North County Judicial District, there is no disparity (i.e., the venire mirrors the community) and no need to address any asserted state interest. As is apparent from our opinion [ ], we do not rely on "administrative convenience" to support our holding.

[7]The issue has never been definitively addressed by the United States Supreme Court. Decisions of lower federal courts are to the contrary. (E.g., *Zicarelli* v. *Gray* (3d Cir. 1976) 543 F.2d 466, 479; *United States* v. *Florence* (4th Cir. 1972) 456 F.2d 46, 49-50; *Franklin* v. *United States* (5th Cir. 1967) 384 F.2d 377, 378.)

the demographics of the larger community and that, at least in the case of San Diego County, the relevant "community" must be deemed to include the entire county.

Unfortunately for O'Hare, the historical evidence which exists does not support a conclusion that the Sixth Amendment was designed to serve as a substantive limitation on government's power to define the community from which the jury venire is drawn. In *Williams* v. *Florida, supra,* 399 U.S. 78, the Supreme Court extensively reviewed the developments which led to the adoption of the Sixth Amendment in 1789. The common law "vicinage" concept, which by colonial times had come to be understood as requiring a jury drawn from the county in which the crime occurred, was only partially incorporated into the Sixth Amendment. Congress was concerned that the common law requirement was too strict. (*Id.,* at pp. 95-96 [26 L.Ed.2d at pp. 457-458].) ■ Thus, *Williams* explains that the Sixth Amendment, as finally proposed by Congress and adopted by the states, explicitly "*left Congress* the power to determine the actual size of the 'vicinage' by its creation of judicial districts." (*Id.,* at p. 96 [26 L.Ed.2d at p. 458], italics added, fn. omitted; accord Heller, The Sixth Amendment (1951) p. 93.)

As we explained earlier, the cross-section requirement on which O'Hare bases his challenges is related to but distinct from the concept of "vicinage" as it survived in modified form in the Sixth Amendment. Nonetheless, it would be nonsensical to take away with the cross-section hand that which was given with the vicinage hand. In other words, *Williams* makes clear that the drafters of the Sixth Amendment intended there should be no limitation on the legislative power to define the confines of the "district" from which jurors in criminal trials are drawn. We could not in good conscience respond by holding that the cross-section requirement, which after all is merely implied by virtue of the Sixth Amendment's guarantee of an "impartial" jury, imposes just such a substantive limitation on the legislative branch of government.

■■■■■ It is thus not surprising to find that the starting point for cross-sectional analysis has routinely been the demographics of the territory served by the court or, in a generic sense, the court's "judicial district."[8] This is true whether the challenge is to a federal district court jury

---

[8] We specify the generic "district" because the concept of "district" in the federal court has developed a very specific meaning referring to the federal trial court. The Sixth Amendment being generally applicable to the states through the due process clause of the Fourteenth Amendment (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 149 [20 L.Ed.2d 491, 496, 88 S.Ct. 1444]), the California Supreme Court in *People* v. *Jones, supra,* 9 Cal.3d 546 gave "district" a generic meaning in holding that the Sixth Amendment guarantees a jury drawn from the district in which the crime was committed. (*Id.,* at pp. 554, 556.) Federal circuit

(e.g., *United States* v. *Goff* (5th Cir. 1975) 509 F.2d 825, 826) or to a state court jury drawn from a county (e.g., *Duren* v. *Missouri, supra,* 439 U.S. 357, 362-363 [58 L.Ed.2d 579, 585-586]) or other local judicial district (e.g., *Taylor* v. *Louisiana, supra,* 419 U.S. 522, 524 [42 L.Ed.2d 690, 694]). We are aware of no federal case in which a defendant has even attempted to challenge Congress' delineation of a federal district on the ground it does not properly constitute the relevant "community" from which the cross-sectional venire must be drawn. More important for the purpose of this case, federal courts have routinely approved the constitutionality of juries drawn from subdivisions of districts against challenges that the venire did not match the demographics of the district-wide community. Chief among these decisions is *United States* v. *Gottfried* (2d Cir. 1948) 165 F.2d 360 in which Judge Learned Hand addressed a defendant's contention that the venire from which his jury was drawn, comprising only the urbanized portion of the Southern District of New York, did not constitute an appropriate "cross section of the community" because of a systematic underrepresentation of rural jurors: "It has indeed been stated that jurors must be drafted 'without systematic and intentional exclusion' of any 'geographical,' as well as of any 'social, religious, racial' or 'political' group; and that may well forbid the officials who draw up the lists from excluding any part of the district at their own choice. We assume that they may not do so; but if they do not, 'geographical' uniformity is satisfied, for the district and circuit courts have had power since the first Judiciary Act of 1789 to divide a district territorially in the interest of an impartial trial, of economy, and of lessening the burden of attendance. There cannot be the faintest question of the c onstitutionality of this statute; the courts have again and again recognized its validity. Furthermore, it would be impossible in practice to administer it, if it were a condition that the divisions made must be so homogeneous that they showed an equal percentage of all possible groups. There are probably no districts in the Union, which can be divided without disclosing in the sections different racial, religious, political, social or economic percentages. To demand that they shall not, would be a fantastic pedantry which would serve no purpose and would put an end to the statute." (*Id.,* at p. 364, fns. omitted.) (See also, e.g., *United States* v. *Florence, supra,* 456 F.2d at p. 49.)

 It is thus a well-established principle of federal law that a congressionally authorized judicial district or subdivision from which the venire is drawn is not subject to constitutional challenge as being either larger or smaller than the relevant "community." Decisions of the California Su-

courts, in reaching conclusions contrary to *Jones,* have interpreted the Sixth Amendment's reference to "district" to mean the territories of the federal district courts. (See cases cited *ante,* fn. 7; see especially *Zicarelli* v. *Gray, supra,* 543 F.2d at p. 477, fn. 59; *Zicarelli* v. *Dietz* (3d Cir. 1980) 633 F.2d 312, 325.)

preme Court are in accord with this principle. Particularly relevant is *People* v. *Jones, supra,* 9 Cal.3d 546 in which, as we discussed earlier (*ante,* fn. 8), the court ascribed a generic definition to the term "judicial district" as it appears in the Sixth Amendment. Discussing both vicinage and cross-section requirements, the court held that the amendment's guarantee of a jury drawn from the "judicial district" where the crime was committed applied to the local judicial districts which constitute subdivisions of Los Angeles County.[9] Clearly implicit in that holding is a rejection of O'Hare's claim that he may be tried only by a jury drawn from the entire county, but we need not rely solely on implication. ■ In *Jones,* the [California] Supreme Court explicitly stated, "[T]he Sixth Amendment allows the Legislature to define the total size of [the area from which the jury can be drawn] by defining the size of the judicial districts."[10] (*Id.,* at p. 554, fn. omitted.)

## II.

■ O'Hare attempts to deflect the force of the historical evidence and distinguish federal precedent by arguing that the creation of local judicial districts within counties is a sui generis issue not encountered in the federal court system where districts nearly always encompass several counties and, not infrequently, entire states. In essence, he asserts there is a constitutionally guaranteed but as yet ill-defined lower size limit for venire drawing areas which the concept of "community" will not permit to be further subdivided. While such a conceptual approach appears to us at least facially inconsistent with the historical evidence discussed earlier, we need not reject the concept in order to reject O'Hare's argument. For even if such a minimum size requirement exists, we are convinced it is not even approached on the facts of this case. [San Diego's North County Judicial District is, both geographically and by population, larger than a number of California counties and there is no suggestion that the district's boundaries have been gerrymandered to produce jury venires of a particular racial or ethnic composition.]

---

[9] Although the court noted the racial disparity between the district in which the crime was committed (31 percent) compared with the district in which Jones was tried (7 percent), it did not rely on this disparity, explaining that "even if the two judicial districts had contained an identical proportion of Negroes, defendant would still be entitled to a jury drawn from a panel including residents of the judicial district where the crime was committed." (*People* v. *Jones, supra,* 9 Cal.3d at p. 555.) This conclusion demonstrates that the court's holding was based primarily on the vicinage concept and not on the cross-section requirement.

[10] The court continued: "Thus, while the outer limits of the 'district' as used in the sixth Amendment are flexible, encompassing greater or smaller areas as the Legislature deems wise, the mandate of the Sixth Amendment remains immutable. The district, however large or small, from which the jury is drawn must include the area wherein the crime was committed." (*People* v. *Jones, supra,* 9 Cal.3d at p. 554, italics added.)

[]

### III.

■ Finally, O'Hare argues that even if the *Legislature* might constitutionally define a judicial district with the same boundaries as the North County Branch, it has not done so. Instead, the branch court's boundaries are merely the creatures of a local court rule adopted by the San Diego County Superior Court. Accordingly, the only *legislatively* defined community in San Diego County is the county itself and the jury venire, to be constitutional, must reflect a cross-section of that community.

To the extent O'Hare is arguing that only the Legislature can constitutionally draw the boundaries of [a] subcounty judicial district, we have trouble comprehending how O'Hare's constitutional right [] can turn on who is attempting to abridge it. ■ While it is true we accord deference to the views of the legislative branch in matters of constitutional interpretation (e.g., *United States* v. *Curtiss-Wright Export Corporation* (1936) 299 U.S. 304, 327-328 [81 L.Ed. 255, 266-267, 57 S.Ct. 216]; *Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 569 [154 P.2d 674]), we extend similar deference to the executive department as well (see, e.g., *The Pocket Veto Case* (1929) 279 U.S. 655, 690 [73 L.Ed. 894, 902, 49 S.Ct. 463, 64 A.L.R. 1434]). It would be a curious comment indeed were we to view the understanding of constitutional rights possessed by judicial officers such as to warrant less deference than we show the legislative and executive branches of government.

■ Moreover, we think we can assume without considerable controversy that legislatively defined judicial districts may not be subdivided without legislative authorization. In the absence of such authorization, a local court rule purporting to create subdivisions would presumably be "contrary to legislative enactments" and hence not "have the force of procedural statutes" normally accorded court rules. (*Shadle* v. *City of Corona* [(1979)] 96 Cal.App.3d [173], 177; see also Gov. Code, § 68070.)

■ O'Hare admits that the Legislature has authorized the creation of judicial districts within subdivisions of Los Angeles County in Government Code section 69641.[11] He asserts, however, that no such authorization extends to San Diego County. O'Hare is correct that there is no statute similar to section 69641 authorizing the board of supervisors to divide San Diego

---

[11] Government Code section 69641 provides as follows: "The board of supervisors of [Los Angeles County], . . . by ordinance may divide such county into not more than nine superior court districts within which one or more sessions of the superior court shall be held."

County into otherwise undefined judicial districts. There is, however, specific legislative authorization for the superior court to hold continuous daily sessions in Vista (Gov. Code, § 69595.5) and, most importantly, specific legislative expression that the jurors hearing cases in Vista sessions need not be drawn from the county as a whole. Code of Civil Procedure section 206a provides: "In counties where sessions of the superior court are held in cities other than the county seat, the names for master jury lists and qualified jury lists to serve in said cities may be selected from the supervisorial district in which said city is located and, if the judges of the court determine that it is necessary or advisable, from a supervisorial district adjacent to the supervisorial district in which said city is located."

Thus, excepting the fact that in Los Angeles County the board of supervisors has designated the local judicial district boundaries whereas in San Diego they are designated by local court rule promulgated by the superior court, there is no functional difference between the two branch court systems. In both cases, the entity drawing the boundary lines has legislative authorization to do so.[12] No precedent of which we are aware [ ] suggest[s] that what the Legislature can properly delegate to a local board of supervisors it cannot properly delegate to a local superior court. Moreover, abundant federal precedent including decisions of the United States Supreme Court approves the constitutionality of a congressional enactment delegating to federal district courts the authority to subdivide federal districts into divisions and to draw jurors solely from the division in which the court sits. (E.g., *Ruthenberg* v. *United States* (1918) 245 U.S. 480, 482 [62 L.Ed. 414, 418, 38 S.Ct. 168]; *United States* v. *Gottfried, supra,* 165 F.2d at p. 364; *Zicarelli* v. *Dietz, supra,* 633 F.2d at pp. 317-318; see also Heller, The Sixth Amendment, *op. cit. supra,* at pp. 96-97.)

While it is true [the court] held in *Johnson* v. *Superior Court, supra,* 163 Cal.App.3d 85 that it was improper to limit selection of the venire strictly to the relevant supervisorial district, [that] conclusion was based on the fact that the supervisorial district was considerably smaller than the geographic boundaries of the North County Branch. (*Id.,* at p. 88.) Such a system

---

[12] [Although the dissent relies on the fact that there are a number of statutory distinctions between "branch courts" and the "judicial districts" authorized by Government Code section 69641, nothing in the language or legislative history of the legislation authorizing the creation of judicial districts in Los Angeles County suggests that the Legistature intended by such legistation to affect the jury selection process outside of Los Angeles County. (See generally Marshall, *The Branch Court* (1959) 47 Cal.L.Rev. 689, 698-700.) In enacting that legislation, of course, the Legislature left intact Code of Civil Procedure section 206a which explicitly authorizes such branch courts to draw juries from a portion of the county in which the branch court is located. We see no reason why the Legislature may not authorize the selection of a jury from a portion of the county in this fashion, without explicitly designating the branch court a "judicial district."]

would inevitably run afoul of the requirements in *People* v. *Jones, supra,* 9 Cal.3d 546 since a jury selected to try a case involving an offense committed within the branch court boundaries but outside the supervisorial district would not be a jury drawn from residents of an area which includes the location where the crime was committed. [The *Johnson* court] specifically invited the superior court to attempt to fashion a remedy short of transferring all criminal cases to the Downtown Branch. (*Johnson* v. *Superior Court, supra,* 163 Cal.App.3d at pp. 88-89.)[13]

We are aware that [the] abbreviated discussion in *Johnson* contains language which can be interpreted to suggest that the county is the only relevant "community." Relying on this language, O'Hare argues that although a branchwide venire is now being used, he is no better off than Johnson was as far as inclusion of jury-eligible Blacks is concerned. [ ] From a practical standpoint, his argument is facially appealing but as a principle of jury selection, it proves too much. As [ ] explained, the constitutional cross-section requirement is a procedural and not substantive requirement. Whenever an accused has committed an offense, it will nearly always be possible, simply by enlarging the area from which the venire is drawn, to obtain different mixes of social/ethnic viewpoints and economic classes on a jury panel. However, it is practically necessary to limit the area of draw in some arbitrary manner, even though such limitation obviously restricts or alters jury composition. (See *United States* v. *Gottfried, supra,* 165 F.2d 360, 364.) Were the rule otherwise, county boundaries themselves could be challenged as resulting in a venire not fairly representative of the "community." The issue thus cannot be whether there is disparity between the North County population and the population of San Diego County; rather, the issue must be whether the boundaries of the area served by the branch court constitute a permissible venire. *Johnson* did not hold that it was not; to the contrary, that decision says a supervisorial district is not proper because it was not the same as the judicial district, and "[a]s such, it cannot be considered the community for purposes of assessing the composition of the jury venire." (*Johnson* v. *Superior Court, supra,* 163 Cal.App.3d at p. 88.) Here, however, we do have a judicial district, originally defined for the municipal court, but by local rules made applicable to the Vista sessions of the superior court as well. Not only does use of this district to draw jurors not violate any precedent, but it appears to comport

---

[13] [Inasmuch as defendant does not claim that the jury selection process in this case was flawed because the boundaries from which North County juries are selected were changed—in response to *Johnson*—after the date of his alleged offense, there is no occasion to address the question whether the "previously ascertained by law" clause of the Sixth Amendment (see fn. 5, *ante*) is applicable to the states. (Compare *Zicarelli* v. *Dietz, supra,* 633 F.2d 312, 320-326, maj. opn. (clause not applicable] with id. at pp. 326-329, dis. opn. [clause applicable].) In any event, during the pendency of this writ proceeding defendant was actually tried by a jury drawn from the entire county. (See fn. 1, *ante*.)]

precisely with the statutes which regulate the jury selection process.[] (See Code Civ. Proc., §§ 193, 197, 203, 204.5, 206, 206a.)

## IV

It is in a sense paradoxical that the pluralistic nature of our society is at the same time a source of strength and a source of conflict for this state and nation. Courts in particular have been torn between the practical need to recognize differences in race, ethnicity, gender and religion for the purpose of rectifying discrimination and our aspirational goal that such differences are and should be irrelevant. (See generally *University of California Regents v. Bakke* (1978) 438 U. S. 265 [57 L.Ed.2d 750, 98 S.Ct. 2733]; see also *Bakke* v. *Regents of University of California* (1976) 18 Cal.3d 34 [132 Cal.Rptr. 680, 553 P.2d 1152].)

■ In the area of a criminal defendant's right to be tried by an impartial jury of his peers, however, we have firmly and unequivocally rejected the notion that a defendant cannot get a fair trial unless the jury contains some given number of persons sharing the defendant's personal characteristics. (*Taylor* v. *Louisiana, supra,* 419 U.S. at p. 538 [42 L.Ed.2d at p. 702]; *Apodaca* v. *Oregon* (1972) 406 U.S. 404, 413-414 [32 L.Ed.2d 184, 192-193, 92 S.Ct. 1628] [plur. opn. of White, J.].) In fact, given the ever-increasing mobility of our society, the jury which decides a defendant's guilt or innocence may have very little relationship to the defendant at all. The constitutional principles which guarantee a local jury require that jurors be selected from an area which includes the scene of the crime, which is not necessarily the same as or even close to the location where the defendant resides.

■ What the Sixth Amendment does guarantee to every defendant, regardless of his personal characteristics, is a jury drawn from a venire from which no member of the local community was arbitrarily or unnecessarily excluded. Because O'Hare has not claimed that any cognizable group of persons in the North County Judicial District was excluded from the venire, and because the Legislature has authorized the North County Branch to draw jurors from less [than] the entire county, we hold there is no constitutional or statutory impediment to the use of a venire drawn solely from the population of the North County Judicial District for purposes of the trial of criminal cases in the North County Branch. [ ]

[End of Court of Appeal opinion.]

The judgment of the Court of Appeal is affirmed.

**BROUSSARD, J.**—I respectfully dissent.

While the Legislature may properly designate a portion of the county as the "community" from which the jury venire is drawn, it has not done so in San Diego County. The branch courts in that county do not constitute autonomous judicial districts, but function as units of a countywide system. The San Diego County Superior Court thus serves the entire county, which constitutes the relevant community. Both the state and federal Constitutions require that jury venires represent a fair cross-section of the county-wide population.

I am troubled by the majority's casual treatment of a fundamental constitutional right. Relying only on the fact that it has not discovered any substantive limitation on the Legislature's power to establish the boundaries of the "community," the majority leaps to the unsupportable conclusion that judicial administrators are also competent to do so. This position treats the definition of the "community" as a purely administrative function, and ignores the obvious impact on a criminal defendant's constitutional right to a representative jury. As Justice Staniforth aptly noted in his dissent to the opinion of the Court of Appeal, "it is constitutionally intolerable to abridge a defendant's right to trial by his peers based on an arbitrary, nonrepresentative, bureaucratic choice resting on undisclosed and possibly indefensible considerations."

The Sixth Amendment guarantees criminal defendants "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." (U.S. Const., 6th Amend.) As the majority points out, the history and development of the Sixth Amendment supports the authority of the Legislature to define the community from which the jury venire is drawn.

Decisions of this court have affirmed this principle. In *People* v. *Jones* (1973) 9 Cal.3d 546, 554 [108 Cal.Rptr. 345, 510 P.2d 705], we stated that "[i]t is undeniable that the Sixth Amendment . . . allows the Legislature to define the total size of [the area from which jurors are drawn] by defining the size of the judicial districts." While *Jones* addresses the vicinage requirement rather than the fair cross-section requirement, it would be anomalous to recognize the Legislature's authority to define the area from which jurors are drawn for one purpose and not the other. Thus, the issue in this case is not whether the Legislature is authorized to define the "community" as an area contained within the county, but whether it has done so in San Diego County.

Pursuant to constitutional requirements, "[i]t is the policy of the State of California that all persons selected for jury service shall be selected at random from a fair cross section of the population of the *area served by the court.* . . ." (Code Civ. Proc., § 197, italics added.)[1] Generally speaking the territorial jurisdiction or "area served" by a state trial court is the county in which it sits. (Pen. Code, § 691, subd. 3; *People* v. *Jones* (1964) 228 Cal. App.2d 74, 86 [39 Cal. Rptr. 302].) Thus, absent legislation redefining the "community," the jury for felony trials must represent a fair cross-section of the countywide population.

The majority attributes unwarranted significance to the Legislature's creation of the North County Branch of the San Diego County Superior Court. (Gov. Code, § 69595.5.) It finds that the creation of branch courts is functionally equivalent to the creation of judicial districts and operates to redefine the community from which jurors are to be drawn. This position, however, is not supported by legislative enactments on the subject.

The Legislature treats the creation of branch courts differently from the creation of judicial districts. Government Code section 69643 provides: "Whenever the board of supervisors finds that changes in population make necessary or expedient the change of boundaries of any district, the change of, addition of, or elimination of any location at which sessions of the superior court are to be held, or the creation of new districts, it may make such changes by ordinance." Thus, the Legislature has delegated its authority to the board of supervisors to create branch courts *or* judicial districts. However, it has placed specific limitations on the board's power to create judicial districts which do not apply to the creation of branch courts.

Government Code section 69641 limits the creation of new judicial districts to counties with a population of at least 4 million.[2] Government Code section 69644 requires that each district contain at least 250,000 people.[3] Minimum population requirements prevent the creation of artificially small

---

[1] See also Code of Civil Procedure section 193 which defines a trial court as "a body of persons returned from the citizens of the *area served by the court* . . . .' (italics added); Code of Civil Procedure section 203 which requires that persons listed as available for service as trial jurors be "fairly representative of the population in the *area served by the court* . . . ." (italics added); and Code of Civil Procedure section 204.5 which requires that the plan for selection of jurors be "designed to insure a random selection of a fair cross section of the persons residing in the *area served by the court"* (italics added).

[2] Section 69641 provides: "The board of supervisors of any county, which has a population of not less than 4,000,000 as determined upon the basis of the last preceding census taken under the authority of the Congress or the Legislature, by ordinance may divide such county into not more than nine superior court districts within which one or more sessions of the superior court shall be held." San Diego County contains fewer than 4 million people.

[3] Section 69644 provides: "An ordinance creating or changing the boundaries of any district shall not result in any district having an estimated population of less than 250,000."

"communities." Should the Legislature elect to utilize districts as the "communities" from which jurors are drawn, this safeguard both ensures a sufficient number of eligible jurors from which to create a venire and prevents excessive dilution or distortion of the various segments represented in the larger "community."

Unlike decisions by the board of supervisors to create new branch courts, decisions to create new districts are subject to legislative review. Government Code section 69650 provides: "At the next succeeding general session of the Legislature following division of a county into districts, or following any change in the boundaries of a district, the Legislature may change the boundaries of the district if he [*sic*] deems such action advisable." This section could be read as providing for subsequent legislative approval and codification of decisions regarding districts made by county supervisors; it could also be read as providing for legislative power to amend those decisions. In either case, the section contemplates subsequent legislative review of county ordinances which create new districts or change existing district boundaries. The distinctions drawn by the Legislature between the creation of judicial districts and the creation of branch courts support the conclusion that the county cannot create branch courts and then treat them like judicial districts.

Furthermore, local rules make it clear that the superior court branches in San Diego County do not operate as independent judicial districts. Jurisdiction over criminal trials does not lie exclusively in the district in which the crime was committed. All felonies initiated by indictment are heard in the Downtown Branch. (San Diego County Super. Ct. Rules, div. III, § 1, rule 1.3.) Cases arising in the North County Branch may be transferred to the Downtown Branch for "good cause" or upon the supervising judge's determination that the "limitations" of the North County Branch make such a transfer appropriate. (*Ibid.*) Since one branch court may try cases which were initiated in another branch, the branches do not exclusively serve separate "areas" or "communities."

The majority finds further support in Code of Civil Procedure section 206a for its conclusion that the Legislature has authorized the creation of a "community" smaller than the county. That section permits selection of the jury venire from supervisorial districts in which branch courts are located, or supervisorial districts adjacent thereto, where the branches are located in cities other than the county seat.[4] The North County, however, does not

---

[4]Section 206a provides: "In counties where sessions of the superior court are held in cities other than the county seat, the names for master jury lists and qualified jury lists to serve in said cities may be selected from the supervisorial district in which said city is located and, if the judges of the court determine that it is necessary or advisable, from a supervisorial district adjacent to the supervisorial district in which said city is located."

correspond either to a single supervisorial district, or to a combination of adjacent districts. Section 206a confers no authority on the superior court to draw "district" lines which do not conform to existing supervisorial boundaries, and by implication withholds such authority.

Ironically, the majority adopts the opinion of the same court which previously held that the Fifth Supervisorial District in San Diego County "cannot be considered the community for purposes of assessing the jury venire." (*Johnson* v. *Superior Court* (1984) 163 Cal.App.3d 85, 88 [209 Cal.Rptr. 425].) That decision was based on two grounds. First, Code of Civil Procedure section 206a does not convert a supervisorial district into a judicial district. (*Ibid.*) Second, the supervisorial district is smaller than North County. (*Ibid.*) After finding that "neither the Fifth nor North County is a separate judicial district," the Court of Appeal analyzed defendant's claim with the assumption that the county constituted the relevant community. (*Ibid.*)

The majority ignores half of the holding in *Johnson* and asserts that because the North County area is coterminous with the area from which the jurors are drawn, any previous constitutional defect is cured. However, just as Code of Civil Procedure section 206a does not convert a supervisorial district into a judicial district, neither does Government Code section 69595.5 convert North County into a judicial district. The majority also ignores the explicit statement in *Johnson* that North County is not a judicial district (*ibid.*), and fails to explain by what process it has since become one.

Neither Government Code section 69595.5 nor Code of Civil Procedure section 206a creates judicial districts in San Diego County. Given the far-reaching implications for jury composition, we should not infer such an intent absent express legislative direction. The legislative process provides for careful and informed decisions, based on assessment of relevant data and input from constituents whose interests are at stake. In contrast, the decision to treat the North County area as the "community" was made by a court administrator, presumably for reasons of administrative convenience. I cannot equate this bureaucratic choice with a considered legislative decision.

The jury venire for state criminal trials may be drawn from judicial districts within the county if the Legislature expressly creates such districts and provides that they will operate as "communities." However, absent legislative redefinition, the county is the area served by a state trial court and constitutes the relevant community for purposes of assessing the composition of the jury venire. Juries in San Diego County must be drawn from and represent a fair cross-section of the countywide population.

In view of the fact that the matter is technically moot, the judgment of the Court of Appeal should be reversed and that court should be directed to discharge the alternative writ and deny the petition.

Bird, C. J., and Reynoso, J., concurred.

On February 24, 1987, the opinion was modified to read as printed above.