N.R. SMITH, Circuit Judge,
concurring in the judgment:
A jury pool must be “reasonably representative” of the distinctive groups in the community. Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). However, the U.S. Supreme Court has not prescribed a particular statistical test for evaluating to what degree a distinctive group’s underrepresentation in a jury pool substantiates a fair cross-section claim. Berghuis v. Smith, 559 U.S. 314, *1173 329, 130 S.Ct. 1382, 176 L.Ed.2d 249 (2010).
I would affirm the district court’s decision, because Hernandez-Estrada’s fair cross-section claims fail Duren’s second prong[1] under the tests used by any United States Circuit Court of Appeals. In the Southern District of California during the relevant period, African-Americans constituted 5.2% of the jury-eligible population and were underrepresented.[2] United States v. Hernandez-Estrada, 704 F.3d 1015, 1020-21 (9th Cir.2012). The 2009 jury wheel data reflects (1) a 1.7% absolute disparity, (2) a 32.7% comparative disparity, (3) an absolute impact of 0.39 fewer African-American jurors on a 23-member grand jury, and (4) 14 standard deviations. See id. at 1018, 1021.
This court has “declined to find under-representation of a distinctive group, where the absolute disparity was 7.7% or lower.” United States v. Rodriguez-Lara, 421 F.3d 932, 943-44 (9th Cir.2005). Thus, Hernandez-Estrada’s data did not evidence actionable exclusion under Ninth Circuit law.
Hernandez-Estrada’s data also does not reflect a substantial exclusion under any other Circuit’s test. The First, Seventh, Eighth, and Eleventh Circuits solely rely on the absolute disparity test. See United States v. Royal, 174 F.3d 1, 10-11 (1st Cir.1999); United States v. Ashley, 54 F.3d 311, 314 (7th Cir.1995); United States v. Clifford, 640 F.2d 150, 155 (8th Cir.1981); United States v. Pepe, 747 F.2d 632, 649 n. 18 (11th Cir.1984). The 1.7% absolute disparity in this case would not be sufficient to establish a prima facie fair cross-section claim under these Circuits’ thresholds. See Royal, 174 F.3d at 10-11 (upholding 2.97%); Ashley, 54 F.3d at 314 (no prima facie case of underrepresentation if disparity does not exceed 10%); Clifford, 640 F.2d at 155 (upholding 7.2%); United States v. Rodriguez, 776 F.2d 1509, 1511 (11th Cir.1985) (no prima facie case of underrepresentation if disparity does not exceed 10%).
The Second and Fifth Circuits apply absolute disparity and absolute impact. See United States v. Rioux, 97 F.3d 648, 657-58 (2d Cir.1996) (applying absolute disparity and absolute impact); Mosley v. Dretke, 370 F.3d 467, 479 n. 5 (5th Cir.2004) (applying absolute disparity and noting comparative disparity could be used in another case); United States v. Goff, 509 F.2d 825, 826-27 (5th Cir.1975) (applying absolute impact test). Under Second and Fifth Circuit law, Hernandez-Estrada’s absolute disparity figure is too low, and the absolute impact of excluding less than one grand juror would likewise be insufficient. See Rioux, 97 F.3d at 658 (upholding 2.14% absolute disparity); United States v. Biaggi 909 F.2d 662, 678 (2d Cir.1990) (holding absolute impact of two fewer African-American jurors in a venire of 60 not actionable); United States v. Butler, 611 F.2d 1066, 1070 (5th Cir.1980) (holding absolute disparity under 10% not actionable); Goff, 509 F.2d at 826-27 (holding absolute impact of 1.4 fewer African-American jurors in the 23-person grand jury not actionable).
*1174 Hernandez-Estrada’s claim would also fail the Tenth Circuit test applying absolute disparity and comparative disparity. See United States v. Shinault, 147 F.3d 1266, 1273 (10th Cir.1998) (holding insufficient a 2.56% absolute disparity and a 50.09% comparative disparity when the group at issue constituted 5.11% of the jury-eligible population). The 1.7% absolute disparity and 32.7% comparative disparity for a small minority population (5.2%) here would evidence too insignificant an underrepresentation in the jury pool under Tenth Circuit law.
Similarly, the Third Circuit’s test, applying absolute disparity, comparative disparity, and standard deviation, would defeat Hernandez-Estrada’s claim (registering 14 standard deviations). See Ramseur v. Beyer, 983 F.2d 1215, 1230, 1232-33 (3d Cir.1992) (en banc) (upholding 14.1% absolute disparity, 40.1 % comparative disparity when distinctive group made up 35.9% of jury-eligible population, 28.9 standard deviations).
Finally,[3] Hernandez-Estrada’s statistical evidence would not be actionable under the Fourth Circuit’s test. The Fourth Circuit conflates the second and third Duren prongs and holds that “use of current voter registration lists as the source for a jury pool from which random selection of jurors is made presumptively provides a fair cross-section.” United States v. Lewis, 10 F.3d 1086, 1090 (4th Cir.1993). To overcome the presumption, there must be a showing of “affirmative discrimination in [voter] registration.” Id. Here, Hernandez-Estrada’s claim would fail, because there is no evidence of such affirmative discrimination.
While Hernandez-Estrada’s claims do not meet Duren’s second prong, the majority is correct that exclusive use of the absolute disparity test seems inappropriate. United States v. Rodriguez-Lara, 421 F.3d 932 (9th Cir.2005) and its predecessors required us to accept up to a 7.7% absolute disparity based on a distinctive group’s representation in a district’s general populace and the group’s presence in the district’s jury pool. Id. at 943-44. This threshold necessarily doomed claims challenging the underrepresentation of minority populations comprising less than 7.7% of the general population. Id. Consequently, Rodriguez-Lara tended to deny the historically disenfranchised the “opportunity to be considered for service on grand and petit juries,” an interest the Jury Selection and Service Act endeavors to protect. 28 U.S.C. § 1861.
Those facts should cause us to question Rodriguez-Lara, and overrule it in the appropriate case. However, we should do so where a workable standard could be developed, based on data and statistics in that case. Here, the majority relies on the third Duren prong to affirm Hernandez-Estrada’s conviction and avoids applying any new standard to replace the rule expressed in Rodriguez-Lara. Had some statistical analysis under Duren’s second prong been necessary to the outcome of Hernandez-Estrada’s case (because he had presented statistics tending to show actionable underrepresentation), the majority could have demonstrated a reasoned application of the appropriate statistical tests. Such analysis could have served as a framework for district courts to apply to future fair cross-section claims.
We owe the district courts more direction than a survey of statistical measures to solve this problem. While the discussion of available tests may aid the district courts in choosing a fitting meas *1175 ure for a given fair cross-section challenge, the majority still provides no standard to evaluate minority exclusion. With only discussion, the district courts are left with at least these questions: In what circumstances would the district court consider statistics from a particular test? Should it apply more than one test? If so, which ones? If it were to evaluate multiple tests, which would be controlling? What outcomes under any test or tests would constitute a legally intolerable exclusion?
Formerly, Rodriguez-Lara compelled us to apply an overly rigid rule, which, while providing certainty, also tended to discriminate against some minority groups. Now at the other end of the spectrum, the majority establishes a laissez faire approach likely to precipitate entirely uncertain — and likely conflicting — outcomes.
Consequently, I respectfully concur only in the judgment.

. A successful fair cross-section claim requires "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.” Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

. Hispanic people comprised 22.5% of the jury-eligible population. Hernandez-Estrada, 704 F.3d at 1020. However, they were overrepresented in the jury pool. Id. at 1021. Thus, I only address the claim based on African-American underrepresentation.

. Neither the Sixth Circuit nor the D.C. Circuit has definitively established a test for assessing Duren's second prong.